26 Cal.App.4th 615 (1994)
31 Cal. Rptr.2d 687
In re NINA P. a Person Coming Under the Juvenile Court Law.
DEPARTMENT OF SOCIAL SERVICES OF DEL NORTE COUNTY, Plaintiff and Respondent,
v.
LAURA C., Defendant and Appellant.
Docket No. A059449.
Court of Appeals of California, First District, Division Two.
July 1, 1994.
*616 COUNSEL
Mat Zwerling and Enid E. Baggett for Defendant and Appellant.
Frank Peterson for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
*617 OPINION
KLINE, P.J.
Appellant Laura C. appeals a juvenile court order establishing a legal guardianship for her daughter Nina P. Although she raises other issues, appellant's chief contention is that the court erred in changing the permanent plan from long-term foster care to guardianship without the filing of a petition for modification pursuant to Welfare and Institutions Code section 388.[1]
As we shall explain, we have determined that the department of social services (DSS), the parents and any other interested parties must file a petition under section 388 to seek modification of an existing order; however, we ultimately conclude the error in this case was harmless and thus does not require reversal. Finding the remaining contentions unpersuasive, we shall affirm the judgment.

STATEMENT OF THE CASE AND FACTS
The minor, Nina P., was born on December 11, 1983, to appellant and Patrick W. Nina lived with her mother; when her mother married Matt C., he moved in with them. On December 4, 1990, a petition was filed pursuant to section 300, subdivision (a), alleging Nina was in need of protection. Specifically, the petition alleged that Nina's stepfather had picked her up to his eye level and then dropped her to the ground and kicked her in the leg. Nina was placed in the home of her maternal grandmother, Connie P., where she remained.
A contested jurisdictional hearing was held on January 3, 1991. The court found the allegations of the petition true, and ordered Nina to remain in foster care. The court further ordered that Nina's stepfather have no contact with the child during her visits with appellant.
At the dispositional hearing, held January 18, 1991, appellant's attorney requested that appellant be permitted unsupervised visits with Nina. Nina's counsel opposed this request and stated that supervised visits should continue as Nina was "very fearful." The court continued the supervised visitation pending appellant's completion of a parenting class.
On May 7, 1991, the social worker filed a six-month review of the family reunification efforts and recommended that Nina be continued in her foster care placement. On May 10, appellant's attorney objected to the social *618 worker's proposal and asked that a contested hearing be held. At hearings held on June 6 and 7 the court heard testimony from appellant and her new husband, Mr. C., and ordered that Nina remain in her foster home placement. The court also set a permanency planning hearing.
On January 9, 1992, the court held the permanency planning hearing and adopted a plan for long-term foster care. On April 17, 1992, the court conducted a hearing concerning Mr. C.'s visitation rights at the request of Nina's attorney, Thomas Gerin. After receiving evidence that Nina had been having nightmares around the time of her visits with her stepfather (two of which included suicidal thoughts) the court terminated all visitation between Nina and Mr. C. pending the May 1 permanency planning review hearing.
On April 22, the social worker, Ms. Buzzini, filed a report that, for the first time, recommended that Connie P. seek guardianship of Nina. The report stated that Nina was bonded with her grandmother and very devoted to her uncle, who lives with them. In the four months prior to this report appellant had visited Nina only twice, at the DSS office. Ms. Buzzini reported that Nina and her mother did not appear bonded; that Nina said she did not wish to return home and did not want to visit her stepfather; that Nina found it difficult to make the decision to refuse reunification and would benefit from a final resolution of this matter. At the May 1 hearing the court relied on this report in concluding Nina needed "a rest from her stepfather." The court ordered there be no contact between Nina and Mr. C. pending the next hearing when, the court stated, "Connie P. will seek guardianship of Nina."
On August 28, the court heard testimony from appellant, Matt C. and Connie P. Appellant testified she was concerned about Nina staying with her mother because Ms. P. has high blood pressure and the beginning of cataracts. Matt C. denied he committed the acts that led to the initial declaration of the dependency and said he wanted Nina to come home.
Connie P. described Nina's nightmares and stomach problems, which she ascribed to the stress of this case. She stated that she was aware of the duties of a guardian and believed she could be a good guardian for Nina.
Based on the evidence presented the court ordered that the permanent plan be changed from long-term foster care to a permanent plan of guardianship. Appellant was allowed continued visitation, but Mr. C. was denied any contact with Nina.
A timely notice of appeal was filed on October 22, 1992.

*619 DISCUSSION

I.
(1) Appellant contends it was error for the court to order a change from long-term foster care to guardianship in the absence of a petition for modification under section 388. Section 388 provides, in pertinent part, that "Any parent or other person having an interest in a child who is a dependent child of the juvenile court ... may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court for a hearing to change, modify, or set aside any order of court previously made...." According to this statute, the petition must be verified and must set forth "in concise language" the factors supporting a modification of the court's existing order. In this case, no petition for modification was filed; the request for a modification was made solely in the written reviews prepared by the social worker, Ms. Buzzini.
Appellant finds support for her claim in In re Elaine E. (1990) 221 Cal. App.3d 809 [270 Cal. Rptr. 489]. In that case the father of a dependent child asserted the court had improperly precluded him from offering evidence of changed circumstances to support his request for unsupervised visitation. (Id., at p. 814.) The reviewing court concluded the trial court had acted properly because "[w]here, as here, the noncustodial parent seeks modification of an existing order, he must comply with the specific requirements of section 388.... Without the requisite proof of changed circumstances the trial court properly rejected [the father's] request to modify the existing visitation order." (Id., at p. 815.) Based on this conclusion, appellant argues an existing juvenile court order may not be altered unless the moving party has complied with the procedural requirements of section 388.
We do not think Elaine E. stands for the proposition that an existing order may never be changed unless a petition for modification is filed. Elaine E. simply holds that a noncustodial parent seeking modification must comply with section 388; it does not address the question of whether a social worker, who has continuing contact through periodic reviews, may include a modification request in a social study report.
Appellant contends that the question was answered in the negative in In re Marilyn H. (1993) 5 Cal.4th 295 [19 Cal. Rptr.2d 544, 851 P.2d 826]. In Marilyn H. the mother of two young children in foster care asked the court to consider returning the children to her care based on changed circumstances. The request was made at the permanency planning hearing; the mother failed *620 to file a petition under section 388. The juvenile court determined return of the children was not an option at a section 366.26 hearing and concluded that, at that point, the only question was whether the children would be placed in long-term foster care, placed under guardianship or freed for adoption. It accordingly denied the mother's request.
On appeal to the Supreme Court the mother (1) maintained the court erred in its belief that its options were so limited; and (2) argued that, pursuant to section 385, the court had inherent power to consider ordering the children returned to her. The court rejected the first claim and concluded "the sole purpose of the section 366.26 hearing is to select and implement one of the listed permanent plans." (In re Marilyn H., supra, 5 Cal.4th at p. 304.) The court also rejected the mother's second argument, reasoning that section 385 is explicitly subject to the procedural requirements of section 388.[2] The court thus concluded section 385 does not permit the court to modify its previous order at the request of a party in the absence of a verified petition filed by that party in accordance with section 388. (5 Cal.4th at p. 305.)
Marilyn H., like Elaine E., does not control this case, which involves a modification request made by DSS, not a parent. Marilyn H. clearly is limited to parental requests for modification made after the termination of reunification services. As the court explained, if a parent wishes to regain custody of a child after reunification has ended the need for a section 388 petition is obvious: "Once family reunification services are terminated, the welfare agency's focus shifts from monitoring the parents' progress toward reunification to determining the appropriate placement for the child. Accordingly, the welfare agency would not be in a position to know at the section 366.26 hearing what progress the family has made on the reunification plan. The requirement of filing a petition provides the mechanism by which the welfare agency is put on notice of the need to turn its attention to such matters." (In re Marilyn H., supra, 5 Cal.4th at pp. 305-306, fn. omitted.)
This reasoning, persuasive in the context of a parental request for return of the children, simply does not apply here. In this case, the court faced no evidentiary void since the social worker's reports provided ample evidence of changed circumstances necessary to support establishment of a guardianship. Thus, while the social services agency in Marilyn H. had no way to assess the propriety of the mother's sudden request for return of the children, the reports in this case gave appellant notice of the basis for the request and provided her an adequate opportunity to prepare her opposition. Marilyn H. thus cannot be interpreted as requiring a section 388 petition when DSS initiates the request for modification.
*621 While we are unpersuaded by appellant's contentions, neither are we impressed by respondent's analysis. Respondent asserts the procedure followed here was legally sufficient to support a modification of the court's order. According to respondent, the procedure the court employed is authorized by rule 1465(b), which provides that at any review hearing following the establishment of long-term foster care "[i]f circumstances have changed since the permanent plan was ordered, the court may order a new permanent plan under section 366.25 or 366.26 at any subsequent hearing, or any party may seek a new permanent plan by a motion filed under rule 1432 [which sets forth the required contents of a petition for modification.]" (Italics added.) Because this language is phrased in the disjunctive, respondent suggests that when a long-term foster care arrangement is subjected to periodic review the court may order a modification warranted by circumstances regardless of whether a petition has been filed under section 388. We disagree. Rule 1465(b) simply permits a court to raise the issue of modification itself if circumstances so require; it does not provide others an alternative to the procedure set forth in section 388, which applies whenever a parent or other interested person seeks modification of an existing order.
Respondent also relies on rule 1464(a), which provides that "[t]he proceedings for the appointment of a legal guardian for a dependent child shall be in the juvenile court. The request for appointment of a guardian may be included in the social study report prepared by the county welfare department. A separate petition shall not be required." Respondent maintains this rule specifically authorized the social worker in this case to propose a guardianship without following the procedures set forth in section 388. This argument is unavailing. Rule 1464 is the general provision concerning the establishment of a legal guardianship in the first instance; it does not purport to prescribe the procedures that must be followed where, as here, a person seeks the appointment of a guardian as a modification of an existing permanent plan. Those procedures are specifically set forth in section 388.
Contrary to the position of our concurring colleague, we have concluded the actions of the juvenile court cannot fairly be characterized as a change under section 366.3, subdivision (c) based on the court's independent assessment that guardianship was warranted by the changed circumstances.[3] The change was not motivated by the court's sua sponte determination that *622 guardianship was best for Nina, but was the product of the DSS request for guardianship, founded on the factors the social worker noted in her reports. Because the change was made pursuant to a DSS request it cannot now be viewed as resulting from the court's own determination that a change was necessary.
Because the social worker has regular contact with the court, it may reasonably be argued that he or she should not be required to file a petition for modification when that request could more expeditiously be made in the periodic report. While that argument is not without appeal, we think it is safer and wiser to require compliance with section 388 each time a modification is requested, whether that request originates with a parent, DSS or any other interested party.[4] Section 388 requires that a petition for modification be verified and set forth specifically the circumstances supporting the requested change. The statute further provides that if it appears the interests of the child would be promoted by the change, the court shall set a hearing and give notice, or cause notice to be given, to those interested in the proceedings. This statute thus contains procedural safeguards designed to protect the due process rights of those whose interests will likely be affected by the decision. Because these rights may not be fully protected if other, less exacting procedures are followed we conclude section 388 must be followed in all instances in which modification of a permanent plan is sought.[5]
The failure of the court to require a petition for modification does not, however, require reversal. Although the procedure the court allowed did not follow the letter of section 388, appellant's due process rights were not in any way compromised.
*623 The social worker filed two reports that clearly requested Ms. P. be declared Nina's legal guardian. The first, dated April 22, 1992, noted several factors warranting a modification, although these were not characterized as "changed circumstances." The report thus stated that appellant did not visit Nina much, since she was angry at her mother, Ms. P.; that Nina had reported that Mr. C. had touched her breasts; that Nina and appellant were not bonded; and that Nina stated she does not wish to return home and does not want to visit her stepfather. At the May 1 hearing the court relied on these factors to terminate all contact between Nina and her stepfather and set a hearing on the issue of guardianship.
The next social study report, filed August 3, 1992, again recommended that Ms. P. be declared Nina's legal guardian. The report stated that appellant had attempted to have Nina see Mr. C. during their visits, in violation of the court's order. The social worker further observed that appellant did not interact with Nina "in a mother/daughter relationship;" that Nina was emotionally upset by the continuing custody issues, which affected both her academic performance and her behavior; and that the stress of the proceedings contributed to Nina developing an ulcer. The court held a hearing on August 28 to consider the question of guardianship. The court relied on the social worker reports, the prior evidence of Nina's suicidal dreams and the testimony at the hearing in concluding the appointment of Ms. P. as legal guardian would be in Nina's best interests.
Appellant was provided actual notice of the requested change and had ample opportunity to both refute the evidence supporting guardianship and present conflict evidence. Although section 388 was not followed, appellant's due process rights were nonetheless adequately protected.

II., III.[*]
.... .... .... .... .... .... .... .

DISPOSITION
The order appealed from is affirmed.
Smith, J., concurred.
*624 BENSON, J.[*]
I concur in the result reached in the majority opinion. However, I write separately to express my strong disagreement with the majority's holding that the change from long-term foster care to legal guardianship could only be accomplished by means of a verified petition for modification under Welfare and Institutions Code section 388.[1] The fundamental flaw in the majority's analysis is that it fails to discuss the statutory framework governing periodic review of long-term foster care placements.
On January 9, the juvenile court held the section 366.26 selection and implementation hearing in this case.[2] At that hearing, the juvenile court ordered "a permanent plan of long term foster care." The statutory authorization for this permanent plan is found in section 366.26, subdivision (b)(4), which authorizes a court to "[o]rder that the minor be placed in long-term foster care, subject to the regular review of the juvenile court." (Italics added.) This periodic review is, in turn, governed by two statutes (§ 366.3, subd. (c), and § 16503) and by a rule of court (rule 1465(b)).[3] (§ 366, subd. (b).)
*625 Like many other statutory provisions in dependency law, these provisions appear somewhat daunting at first blush. However, they are actually quite straightforward. One commentator has accurately summarized the periodic review process as follows: "[T]he status of the minor must be reviewed every six months. The review may be conducted by the court or an appropriate local agency. On the request of the minor's parents or guardian or of the minor, the court must conduct the review.
"No less frequently than once every 18 months, the court must conduct a review of the previously ordered permanent plan to consider whether the plan continues to be appropriate for the child. The 18-month review may be combined with the six-month review.
"The reviewing body must inquire about the progress being made to provide a permanent home for the minor, and must determine the appropriateness of the placement, the continuing appropriateness and extent of compliance with the long-term plan, the extent of compliance with the case plan, and the adequacy of services provided to the minor.... If circumstances have changed since the last long-term plan hearing, the court may order a new plan under Welfare and Institutions Code Section 366.25 or 366.26 at any subsequent hearing, or any party may seek a new permanent plan by an application for modification. [Citation.]
"Unless parental rights have been permanently terminated, the minor's parent or parents are entitled to receive notice of, and participate in, the review hearings. The reviewing body must presume that continued care is in the interests of the minor, unless the parent or parents prove, by a preponderance of the evidence, that further reunification efforts are the minor's best alternative. In those cases, the court may order that further reunification services be provided to the parent or parents for no more than six months." (5 Markey, Cal. Family Law Practice and Procedure (1993) Postdisposition Proceedings, § 87.32[1], pp. 87-66.2 to 87-66.3, fns. omitted.)
At the January 9 selection and implementation hearing in this case, the juvenile court ordered that the first six-month periodic review hearing would be conducted by the court on May 1. On April 22, in anticipation of the May *626 1 hearing, the social worker assigned to the case submitted a report recommending, among other things, that Nina's maternal grandmother and long-term foster parent, Connie P., "seek guardianship of NINA" and "that this matter be continued for the period of 60 days for the purpose of reviewing the status of the guardianship." Appellant was served with a copy of the report.
At the May 1 hearing, the juvenile court asked appellant's counsel whether he had any comments on the recommendations contained in the social worker's report. Counsel objected to one of the recommendations concerning visitation, but did not take issue with the guardianship recommendation. Accordingly, the court ruled "[t]he case plan is adopted as set out in the report and recommendations; that Connie P[.] will seek guardianship of Nina." The court scheduled a further hearing on the proposed guardianship. On August 3, in anticipation of this hearing, the social worker filed another report confirming her recommendation that Connie P. be appointed as Nina's legal guardian. On August 28, after conducting a full evidentiary hearing, the juvenile court changed the permanent plan for Nina from long-term foster care to legal guardianship and appointed Connie P. as her guardian.
The majority concludes the social worker in this case was an "interested party" and, hence, was required to file a verified petition for modification under section 388.[4] (Maj. opn., ante, p. 622.) This holding ignores the statutorily prescribed role social workers play in the periodic review process for long-term foster care placements. Far from being "interested parties," social workers and the local agencies which employ them are allowed to conduct the periodic review hearings themselves. (See ante, pp. 624-625 and fn. 3.) Only once every 18 months, or on the request of the minor's parents or guardian or of the minor, is the juvenile court required to conduct the review. (Ibid.)
*627 The majority's conclusion "it is safer and wiser to require compliance with section 388 each time a modification is requested" (maj. opn., ante, p. 622), will emasculate the policies behind the periodic review process established by section 366.3, subdivision (c).[5] Under section 388, "... the change of circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged prior order" (Ansley v. Superior Court (1986) 185 Cal. App.3d 477, 485 [229 Cal. Rptr. 771]), a point that the majority acknowledges in the unpublished portion of its opinion. In other words, there is a presumption in favor of continuing the existing order. Section 366.3, subdivision (c), by contrast, establishes a policy favoring modification of long-term foster care placements, requiring the court to review "the progress being made to provide a permanent home for the minor." (See ante, fn. 3; see also In re Heather P. (1989) 209 Cal. App.3d 886, 890 [257 Cal. Rptr. 545] ["An important purpose of dependency proceedings is to provide children with stable, permanent homes"]; § 366.26, subd. (c)(4) [presumption in favor of guardianship over long-term foster care].) This policy is also reflected in section 396, which declares "[i]t is the policy of the Legislature that foster care should be a temporary method of care for the children of this state, that children have a right to a normal home life, [and] that reunification with the natural parent or parents or another alternative permanent living situation such as adoption or guardianship are suitable to a child's well-being than is foster care." (Italics added.) Indeed, the very reason Connie P. sought guardianship in this case was to "add long term stability to [Nina's] life." The majority's judicially imposed requirement that a significant change in circumstances be shown before a long-term foster care placement can be changed directly undermines the express legislative goal of permanent placements.
In my view, this case is a very simple one. Section 366.3, subdivision (c), requires juvenile courts to review "the progress being made to provide a permanent home for the minor" and "the continuing appropriateness and extent of compliance with the permanent plan for the child." (See ante, fn. 3.) Implicit in this review requirement is a requirement that courts change the permanent plan if circumstances warrant. (See rule 1465(b), ante, fn. 3 ["If circumstances have changed since the permanent plan was ordered, the court may order a new permanent plan under section 366.25 or 366.26 at any subsequent hearing...."].) This is precisely what the juvenile court did in this case. The court notified appellant "that Connie P[.] [would] seek *628 guardianship of Nina" and proceeded to conduct a full evidentiary hearing on the proposed guardianship. Only after this hearing did the court change the permanent plan from long-term foster care to guardianship. In light of the express legislative policy favoring guardianships over long-term foster care, the change was warranted by nothing more than the fact Nina and Connie P. had bonded to a sufficient degree that guardianship had become appropriate. I would affirm on that basis.
NOTES
[*] Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication with the exception of parts II and III.
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified. All further references to rules are to the California Rules of Court.
[2] Section 385 provides that "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article." (Italics added.)
[3] Section 366.3, subdivision (c), provides, in pertinent part, as follows: "If the minor is in a placement other than a preadoptive home or the home of a legal guardian and jurisdiction has not been dismissed, the status of the minor shall be reviewed every six months. This review may be conducted by the court or an appropriate local agency; the court shall conduct the review upon the request of the minor's parents or guardian or of the minor and shall conduct the review 18 months after the hearing held pursuant to Section 366.26 and every 18 months thereafter. The reviewing body shall inquire about the progress being made to provide a permanent home for the minor and shall determine the appropriateness of the placement, the continuing appropriateness and extent of compliance with the permanent plan for the child, the extent of compliance with the case plan, and the adequacy of services provided to the child.... [¶] Unless their parental rights have been permanently terminated, the parent or parents of the minor are entitled to receive notice of, and participate in, those hearings. It shall be presumed that continued care is in the interests of the minor, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the minor. In those cases, the court may order that further reunification services be provided to the parent or parents for a period not to exceed six months."
[4] We disagree with the view expressed in the concurring opinion, that this conclusion will "emasculate the policies behind the periodic review process established by section 366.3, subdivision (c)." (Conc. opn., post, at p. 627.) Without question, the court retains the power under section 366.3, subdivision (c) to assess the "continuing appropriateness" of the permanent plan and to modify it when necessary. We have concluded that in this case, however, the court's action cannot be justified on this basis since the modification was not motivated by the court's determination that a change was necessary, it was clearly the product of the DSS request for modification.
[5] In light of this conclusion we need not address appellant's claim that rule 1465(b) requires DSS (which appellant characterizes as a "party" herein) to file a motion when it seeks modification of the existing permanent plan.
[*] See footnote, ante, page 615.
[*] Retired Associate Justice of the Court of Appeal, First District, Division Two, sitting under assignment by the Chairperson of the Judicial Council.
[1] All further statutory references are to the Welfare and Institutions Code. All further references to rules are to the California Rules of Court. All further references to dates are to the year 1992.
[2] The section 366.26 selection and implementation hearing is also referred to as a permanency planning hearing.
[3] Section 366.3, subdivision (c), provides, in pertinent part, as follows: "If the minor is in a placement other than a preadoptive home or the home of a legal guardian and jurisdiction has not been dismissed, the status of the minor shall be reviewed every six months. This review may be conducted by the court or an appropriate local agency; the court shall conduct the review upon the request of the minor's parents or guardian or of the minor and shall conduct the review 18 months after the hearing held pursuant to Section 366.26 and every 18 months thereafter. The reviewing body shall inquire about the progress being made to provide a permanent home for the minor and shall determine the appropriateness of the placement, the continuing appropriateness and extent of compliance with the permanent plan for the child, the extent of compliance with the case plan, and the adequacy of services provided to the child.... [¶] Unless their parental rights have been permanently terminated, the parent or parents of the minor are entitled to receive notice of, and participate in, those hearings. It shall be presumed that continued care is in the interests of the minor, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the minor. In those cases, the court may order that further reunification services be provided to the parent or parents for a period not to exceed six months."

Section 16503 describes the procedures to be used when the six-month periodic review is conducted by a local agency.
Rule 1465(b) implements section 366.3, subdivision (c), and section 16503. It provides, in pertinent part, as follows: "Following the establishment of a plan for long-term foster care... review hearings shall be conducted every six months by the court or by a local review board. At the review hearing, the court or review board shall consider the report of the petitioner and the report of any court-appointed child advocate. No less frequently than once every 18 months, the court shall conduct a review of the previously ordered permanent plan to consider whether the plan continues to be appropriate for the child. The 18-month review may be combined with the six-month review. If circumstances have changed since the permanent plan was ordered, the court may order a new permanent plan under section 366.25 or 366.26 at any subsequent hearing, or any party may seek a new permanent plan by a motion filed under rule 1432. Notice of the hearing shall be given as provided in rule 1460. Parents are to be given notice of all hearings unless their parental rights have been terminated. The court shall continue the child in foster care unless the parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child. In those cases, the court may order reunification services for a period not to exceed six months."
[4] Section 388 provides as follows: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court or the child himself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and, if made by a person other than the child, shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction. [¶] If it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction, the court shall order that a hearing be held and shall give prior notice, or cause prior notice to be given, to such persons and by such means as prescribed by Section 386, and, in such instances as the means of giving notice is not prescribed by such sections, then by such means as the court prescribes."
[5] The majority's conclusion that "the procedures that must be followed where, as here, a person seeks ... a modification of an existing permanent plan .... are specifically set forth in section 388" (maj. opn., ante, p. 621) is also contrary to Supreme Court precedent. In In re Marilyn H. (1993) 5 Cal.4th 295, 306, fn. 6 [19 Cal. Rptr.2d 544, 851 P.2d 826], the Supreme Court specifically held that "[s]ection 366.3 governs the procedure to be followed after a permanent placement has been implemented and a change in status thereafter occurs...."