108 Cal.Rptr.2d 847 (2001)
90 Cal.App.4th 668
In re LANCE V., a Person Coming Under the Juvenile Court Law.
Fresno County Department Of Children and Family Services, Plaintiff and Respondent,
v.
Melody B., Defendant and Appellant.
No. F037282.
Court of Appeal, Fifth District.
July 11, 2001.
As Modified July 24, 2001.
*848 Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant.
Phillip S. Cronin, County Counsel, and Howard K. Watkins, Deputy County Counsel, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION
VARTABEDIAN, Acting P.J.
After dependency jurisdiction had been established for the minor, Lance V., and disposition orders had been made, mother (Melody B.) filed an ex parte motion for mediation regarding the implementation of the visitation orders. Mediation was granted, but the parties were unable to reach an agreement. The court held a hearing following mediation and changed the previous visitation order. Mother appeals from the order altering her visitation, claiming the juvenile court erred when it reduced her visitation without a petition for modification (Welf. & Inst. Code, § 388).[1] We agree and reverse the order altering visitation. In the unpublished portion of this opinion, we explain that mother's additional claim, that the court erroneously ordered visitation at the discretion of the minor, was not timely appealed, that provision being a part of the visitation ordered at the disposition hearing.

FACTUAL AND PROCEDURAL BACKGROUND
Based on mother's history of substance abuse, Lance V., born in March of 1993, had been made a dependent child of the court on more than one occasion. In October of 1999 dependency was dismissed *849 and Lance's father, Leo V., was awarded sole physical custody and joint legal custody of Lance. Mother was allowed weekend visits with Lance, but father was not to allow visits between Lance and his mother if she was under the influence.
On July 31, 2000, mother was walking to the store with Lance when she was stopped by law enforcement. She was under the influence of alcohol and was cited for child endangerment. Lance was removed from her care.
A dependency petition was filed on August 2, 2000, claiming that Lance came within the jurisdiction of the juvenile court under subdivision (b) of section 300. In particular the petition alleged that father knew that mother was drinking but allowed Lance to visit mother and thereby failed to protect Lance from the conduct of his mother.
A report prepared for the disposition hearing cited father's statement that Lance's outbursts of temper seemed to escalate shortly after visits with mother. In addition, father noted that Lance becomes more aggressive, defiant, and angry after the visits. Lance told the case manager that he would prefer to not have visits with mother because he does not like some of the homes she takes him to during the visits. Lance stated he would like to decide whether or not and when he would visit mother. Lance's teacher mentioned to father that Lance's behavior became more manageable by the end of the week, Lance having visited with mother on the weekend.
The social worker recommended that no reunification services be provided to mother, in part because she was not being considered for placement or custody. In addition, the department recommended that visits with mother be reasonable, unforced, and supervised.
At the disposition hearing held on October 23, 2000, the juvenile court ordered Lance placed in the home of father and that visits with mother be reasonable, unforced, and supervised. The department was given discretion to modify visits to be unsupervised when therapeutically advised. A 90-day family maintenance review was scheduled for January 17, 2001.
On November 29, 2000, mother filed an ex parte application for mediation regarding visitation. She stated that she had concerns about future visits with Lance as well as concerns that father had made negative comments about her to Lance. The court ordered mediation.
Mediation was unsuccessful. A court-ordered hearing following mediation was held on December 11, 2000. The hearing began with the social worker supervisor requesting that visitation remain as ordered: reasonable, unforced and with third party supervision. The court asked mother what she was requesting. Mother replied that the matter had been discussed in front of Lance and that had caused problems with the visits. Lance's counsel interjected that there had been a lot of problems with visitation and "a lot of tug of war with this minor." Counsel for the minor stated Lance did not want visits with mother. Mother's counsel requested better control of visits with the minor, and countered that mother was merely trying to comply with an existing court order of visitation. Counsel for mother stated that it was her belief that mother was allowed visits on Saturday or Sunday and Mondays.
Mr. Mikel, a case manager, interjected at this point and stated he was the case manager in March of 2000 and was present *850 for mediation on the exit order.[2] He represented to the court that father had made an effort to protect Lance from mother's alcohol abuse, but "it seems like every time she is out with the child, something happens where he gets picked up again." Mother's counsel disputed this: "I don't know of that being accurate and." She was interrupted by Mikel who stated that the current dependency proceeding was filed to ensure that father followed up on counseling for the minor. Mikel reported that Lance was in a difficult situation, having to tell his mother he does not want to visit on a particular day, while he may wish to visit on other occasions. Mikel suggested that a social worker act as an intermediary in communicating Lance's desire not to visit on a particular day, should that be the case.
Mother's counsel responded that mother believed a visitation schedule had been set up and all she wanted from mediation was enforcement of that schedule.
Father then stated that Lance's psychologist recommended that Lance not be forced to visit and that Lance told him he was tired of seeing mom arrested. Counsel for the department stated that there were ongoing problems with visitation and that a schedule needed to be set up.
Mother stated that visits were ordered twice a week and that she had been showing up for visits. She represented to the court that Lance had said he did not tell anyone that he did not want visits; he wanted to stay and visit her longer. Lance also informed her that father had told Lance that mother was making Lance "crazy" and causing Lance to get in trouble at school. Mother asked the court to talk with Lance and hear from him what he had to say. She claimed that "everybody is in it together" saying Lance did not want to visit her.
Counsel for the minor interjected that Lance refused visits and clearly did not want to visit her. Mother attempted to dispute this when the court interceded and stated that it could believe the minor's attorney and did not need to talk with the minor to have him tell the court what he desired. Mother again stated that Lance had never said he did not want visitation; counsel for the minor again stated that was not the case. Mother replied, "That is not true."
The court interrupted this disagreement and stated that visits would be unforced, once a week, with supervision at the department. The county questioned "At the Department?" The court replied: "At the Department. Okay, that's it."
Counsel for the mother questioned the court, "Your Honor, are you moving the visits back from yesterday to today? Yesterday, she claimed, she had a six-hour third-party [supervised] visit."[3] Immediately thereafter, mother stated, "It's been set up Saturdays for six hours and Monday for four hours already. And yesterday we just had an agreementor last week, for six hours on Saturday, for third party [supervision]." To this the court responded, "I have made my decision. That's it."
On December 19, 2000, mother filed a notice of appeal. The notice of appeal stated, "I appeal from the findings and order of the court.... On December 11, 2000 there was a court hearing following an unsuccessful attempt at mediation. The court changed my visitation from 6-8 hours per week with third party supervision, *851 to 1 hour per week supervised by Department of Children and Family Services."

DISCUSSION

I.

Alteration of Court's Prior Order Without a Section 388 Petition
Mother claims that at the December 11, 2000, hearing the juvenile court erroneously ordered a change in visitation from that ordered at the October 23, 2000, disposition hearing without having before it a petition for modification pursuant to section 388. When the court proceeded to hear the matter without the filing of a section 388 petition, asserts mother, she was deprived of her right to have a proper hearing and the department was allowed to alter visitation without demonstrating an adequate change of circumstances or new evidence.
Respondent counters that mother waived her right to challenge the visitation orders by failing to object at the hearing. Respondent characterizes mother's request for mediation as a request to modify the terms of the existing visitation orders and while she may not have anticipated the particular modifications ordered by the court, the modifications were within the realm of her request. Respondent further contends that mother did not object to the actual entry of orders concerning her visits with Lance.
Mediation in dependency proceedings is governed by section 350, subdivision (a)(2). It provides in pertinent part: "Each juvenile court is encouraged to develop a dependency mediation program to provide a problem-solving forum for all interested persons to develop a plan in the best interests of the child, emphasizing family preservation and strengthening. The Legislature finds that mediation of these matters assists the court in resolving conflict, and helps the court to intervene in a constructive manner in those cases where court intervention is necessary.... [¶] If a dependency mediation program has been established in a juvenile court, and if mediation is requested by any person who the judge or referee deems to have a direct and legitimate interest in the particular case, or on the court's own motion, the matter may be set for confidential mediation to develop a plan in the best interests of the child, utilizing resources within the family first and within the community if required."
When section 350 subdivision (a)(2), regarding mediation in dependency proceedings, was added, the Senate bill contained the following comment:
"The main concept behind mediation is to provide a non-adversarial forum in which the neutral mediator assists the various participants in coming to a voluntary resolution of the dependency issues. The mediator's function is to help empower the parents to be heard, listened to, and to participate directly in what happens to their families.... [T]he mediator has no power to impose solutions but has a duty and obligation to help the parties find their own solution. It differs from arbitration in that an arbitrator can impose a decision and it differs from conciliation which focuses on the relationship of the parties to helps [sic] them resolve future disputes. The advantages of mediation are that it is prospective and not retrospectiveit focuses on future actions that can solve the problem rather than past events that cast blame. It is a problem-solving process, not a win-lose paradigm, [¶].... [¶] According to the sponsor of this bill, the California Chapter of Family and Conciliation Courts, in cases of abuse and neglect, there are many issues which can be mediated. *852 In abuse and neglect, the most important issue is what is best for this family and children. The advantage of the mediation process is that it brings together all the major players in the decision making matrix, including the parent and other significant adults who might provide resources for the child or children. The sponsor contends that mediation is best for deciding what course of action is best for the family and children." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1420 (1991-1992 Reg. Sess.) March 24, 1992.)
Mother here requested mediation to resolve issues regarding the implementation of visitation orders made by the court at the October 23, 2000, disposition hearing. This is an appropriate matter that might be resolved by mediation. If the parties had agreed to visitation accommodations that fell within the parameters of the orders of the court, then the mediation would have been successful. But mediation was not successful here. There is nothing in the code or in the legislative history that provides for a special hearing authorizing a change in orders following an unsuccessful mediation. Contrary to respondent's argument, mother did not seek to alter the previous visitation orders; she sought a voluntary resolution of difficulties that were occurring with visitation as ordered.
Mediation is merely a tool to aid the parties in coming to amicable solutions to difficult family issues. While a court may look to a mediation agreement for guidance, or order that the parties engage in mediation in order to attempt to resolve differences within the confines of the orders of the court, any agreements reached by the parties are not binding on the dependency court. In In re Jason E. (1997) 53 Cal.App.4th 1540, 62 Cal.Rptr.2d 416, the appellate court held that an agreement reached after mediation and prior to a permanency planning hearing is not binding on the dependency court. This was so because the parties to the agreement did not have the power to settle the matter. The court was free to consider the agreement the same as any other evidence and give to it such weight as it deemed proper. (Id. at p. 1547, 62 Cal.Rptr.2d 416.)[4]
When a change in orders is being sought and the pertinent statutes do not otherwise provide a method for change, the proper method is a motion pursuant to section 388. Section 388 provides in pertinent part:
"(a) Any parent or other person having an interest in a child who is a dependent child of the juvenile court or the child himself or herself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and, if made by a person other than the child, shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstance or new evidence which are alleged to require the change of order or termination of jurisdiction.
"...........
"(c) If it appears that the best interests of the child may be promoted by the proposed change of order ..., the court shall *853 order that a hearing be held and shall give prior notice, or cause prior notice to be given, to the persons and by the means prescribed by Section 386, and, in those instances in which the means of giving notice is not prescribed by those sections, then by means the court prescribes."
"Section 388 plays a vital role in the statutory scheme by allowing the juvenile court to modify existing orders in response to new evidence and changed circumstances." (Sheila S. v. Superior Court (2000) 84 Cal.App.4th 872, 879, 101 Cal. Rptr.2d 187.) It "contains procedural safeguards designed to protect the due process rights of those whose interests will likely be affected by the decision." (In re Nina P. (1994) 26 Cal.App.4th 615, 622, 31 Cal.Rptr.2d 687, disagreed with on other grounds in San Diego County Dept. of Social Services v. Superior Court (1996) 13 Cal.4th 882, 55 Cal.Rptr.2d 396, 919 P.2d 1329.) "In juvenile dependency litigation, due process focuses on the right to notice and the right to be heard. `A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses.'" (In re Matthew P. (1999) 71 Cal.App.4th 841, 851, 84 Cal.Rptr.2d 269.)
Here mother was not provided notice that a change might occur, she did not have an ample opportunity to refute the assertions made by others at the hearing, and she was not afforded a full opportunity to present conflicting evidence. The court proceeded here by relying on statements of counsel and statements by father and mother. None of this "evidence" was based on sworn testimony. When mother questioned some of the assertions made by the minor's counsel, the court stated it could believe what it was being told by counsel. The court rejected outright mother's request to question Lance.[5] At the end of the hearing when counsel for the mother, and mother, sought to question the court regarding its orders the court abruptly halted the hearing stating, "I have made my decision. That's it."
While mother requested mediation regarding visitation, she did not request any alteration in the court's previous order. At the December 11, 2000, hearing she clearly sought to present evidence and sought to voice her disagreement with the court's modifications. She was rejected on both fronts. Mother's due process rights to notice and an opportunity to be heard were clearly compromised when the court modified the existing order without holding a properly noticed hearing on the merits. Mother did not, as respondent asserts, waive her right to a proper hearing before the order was modified. Mother sought to utilize the tools provided by the court to resolve difficulties she had encountered in implementing visitation. Such attempts at agreement should be encouraged. Merely because mediation was not successful mother should not have faced a change in the court's order without compliance with the proper procedures. We agree with mother that the juvenile court's order of December 11, 2000, changing her visitation with Lance, should be stricken.

II.[**]

DISPOSITION
The order of December 11, 2000, is reversed and ordered stricken from the record.
*854 BUCKLEY, J., and DAWSON, J.,[***] concur.
NOTES
[*] Pursuant to California Rule of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Discussion, part II.
[1] All future code references are to the Welfare and Institutions Code.
[2] The mediation and exit order that Mikel was referring to occurred in a prior proceeding and was not a part of the current dependency case.
[3] The day of this hearing was a Monday.
[4] The father in Jason E. filed a section 388 petition that was heard at the same time as the section 366.26 hearing.
[5] There was nothing in the record to indicate that it would be harmful to Lance to be questioned. Lance was present at the outset of the hearing but was removed when the court began to discuss the visitation issues with counsel.
[**] See footnote *, ante.
[***] Judge of the Merced Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution,