Filed 5/14/13  In re A.L. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | H038904 (Santa Clara County Super. Ct. No. JD20783) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. A.L., Defendant and Appellant. | |

A.L. (the minor) appeals from an order returning her to the care of her adoptive parents under a plan of family maintenance.  The order was entered following an evidentiary hearing on an oral petition under Welfare and Institutions Code section 388.[1]

On appeal, the minor contends the court abused its discretion in allowing an oral petition to modify a prior court order and, alternatively, there was insufficient evidence to support the court's decision to return her to her adoptive parents' care.

We disagree and shall affirm the order.

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In August 2011, the minor was placed into protective custody after her adoptive parents, G.L. and T.L. (parents), brought her to the Santa Clara County Department of Family and Children's Services (Department) and indicated they were no longer willing to care for her. The parents reported that the minor, then nine years old, was "lying, manipulating, stealing, [having] tantrums, destroying property, hurting the household pet (dog), hitting her sibling, [demonstrating] sexualized behavior, acting out sexually towards her younger sibling and [displaying] daily defiant behavior." The minor had previously been diagnosed with post-traumatic stress disorder and reactive attachment disorder/rule. When interviewed by the Department, the minor reported that her parents "are 'having problems with me' and are 'tired of me.' She reported that her mother stated . . . 'I will be happy when you are gone, cause [*sic*] I can't stand you anymore.' " The minor was placed in a foster home and the parents indicated they were unwilling to accept reunification services.

In September 2011, however, the parents changed their minds and requested family reunification services. According to G.L., the parents discovered that some of the destructive behavior they attributed to the minor had actually been carried out by the sibling.

On November 15, 2011, the court conducted the jurisdiction and disposition hearing, sustaining the first amended petitions removing the minor from parents' custody and ordering family reunification services. The court ordered a Children's Health Council evaluation for the minor and a psychological evaluation for the parents. The parents were further ordered to attend a parent orientation class, a class entitled "Parenting Children with Challenging Behaviors," a class for parents of children who are

2

victims of sexual abuse,[2] as well as a program of psychotherapy to address issues of child sexual abuse, reactive attachment disorder and posttraumatic stress disorder.

In a report prepared for the six month review hearing, the Department recommended continued family reunification services. The report noted that the parents appeared "very motivated" to have the minor return to their care, were engaged in their case plan, adapting their parenting to incorporate what they had learned and believed the Children's Health Council evaluation of the minor would "greatly improve their understanding of how to help [the minor]." However, the social worker also noted in her report that the parents "continue to attribute a certain amount of blame to [the minor] and the Department on why and how [the minor] came to be a dependent this time around." The parents and the minor were visiting, under supervision, since the previous report and the social worker planned to begin unsupervised visits once the parents began their class on parenting children with challenging behaviors and enrolled in individual therapy.

An addendum to the report, filed on May 14, 2012, noted that therapeutic visits were continuing, but that unsupervised visitation was also now taking place with all parties reporting that those visits were going well. The minor was improving at school and in her homework. The parents had participated in training on attachment spectrum disorders and were interested in attending individual therapy sessions with the therapist who led that program.

The minor's Children's Health Council evaluation, attached to the addendum report, diagnosed her with post-traumatic stress disorder, mood disorder not otherwise specified and parent-child relational problem.

The parents' psychological evaluation by Dr. Marilee Ruebsamen, also attached to the addendum report, indicated that father had "characteristics consistent with Obsessive-

---

[2] The record discloses that the minor suffered sexual abuse while living with her biological mother.

3

Compulsive Personality Disorder" and mother "displayed clinical levels of anxiety, and Dependent and Narcissistic personality characteristics." Dr. Ruebsamen concluded it did "not appear that [the parents] are well-equipped to parent emotionally damaged, challenging children, and their previously displayed inconsistency in their willingness to parent the children is very likely to continue."

At the interim review hearing, held on July 9, 2012, the social worker reported that the parents and the minor had been successfully engaging in unsupervised visitation for the past two months. The visits had increased in length, with the minor spending a minimum of two full days a week at her parents' home. The parents had met with the minor's psychiatrist to discuss their concerns over the minor's medications and the role those medications may have played in the minor's "decomposition [*sic*] in behavior" the prior summer. They had also completed the court-ordered "Parenting Children with Challenging Behaviors" class as well as voluntarily attending additional parenting classes that had not been mandated by the court. The social worker indicated that it would be appropriate to return the minor to her parents once the parents began therapy, the minor's medications were stabilized and the minor was transitioned to a new therapist.[3] The report requested a 30-day continuance of the interim review "to address the possibility of [the minor's] return home and ordering Family Maintenance services for [the minor]." The court granted the request.

In a report prepared for the continued hearing, held on August 6, 2012, the social worker reported the parents had begun therapy two weeks prior and were "working on developing empathy and understanding for children with attachment spectrum disorder and children who have been traumatized in general as well as relational issues." The father reported they were working on speaking to both their children about sensitive

_____

[3] According to the report, the change in therapists was prompted by a staffing issue. The new therapist had previously worked with the minor.

4

matters and were educating themselves about attachment and discipline. The parents had worked with the minor's psychiatrist to adjust her medication and had been collaborating with the minor's new therapist as well. They understood the detrimental effect removal from their home had had on the minor and that the minor, though currently stabilized, might not always be so. The social worker ultimately recommended that it was in the minor's "best interest to return to the care of her adoptive parents at this time and receive Family Maintenance alongside her sister."

At the August 6, 2012 hearing, the parents agreed with the social worker's recommendation that the minor be returned to their care and that they receive family maintenance services. Counsel for the Department and the parents noted that the minor and her sister would be returning to school later that month and thus it was critical to transition the minor back into the parents' home before the school year started.

The minor's counsel objected to the court considering a change in recommendation at an interim review hearing without a petition filed under section 388. Counsel conceded that this hearing had been continued from July 9 in order to address the possibility of the minor's return, but minor's counsel was unsure that return was presently the best thing for the minor. The minor "has always wanted to go home from the day she was at the receiving center and that continues to be her position," but minor's counsel asked that the hearing be continued to the end of August to allow for some overnight visits during the school week before considering returning the minor to the home.

The court deemed the Department's recommendation of return to be an oral petition under section 388, noting that all parties had notice that the Department was recommending the minor be returned to her parents' custody. The court found that the social worker's report established both a prima facie showing of changed circumstances as well as that return to her parents' care would be in the minor's best interests. The court set the matter for a contested hearing on August 15, 2012.

5

At the August 15 hearing, the Department social worker, Joanne Quion, testified as an expert in risk assessment and placement of dependent children. In her opinion, it was in the minor's best interest that she be returned to her parents' care with family maintenance services. Quion testified the minor's therapist was doing collateral work with the parents on a weekly basis and the minor's twice-weekly therapeutic sessions were being conducted in the parents' home. The parents were also working with the minor's psychiatrist to adjust her medication. Quion had no concerns about the parents' commitment to caring for the minor and did not agree with Dr. Ruebsamen, the parents' psychological evaluator, that the parents were not "well equipped parents." Quion noted that the parents had been open to new parenting methods and had proactively sought other opinions and assistance both in parenting the minor and her sibling, as well as in managing their own emotions regarding the children. Quion agreed with the Children's Council's assessment that, until she had a permanent placement, the minor would have difficulty addressing her trauma therapeutically.

Bulmaro Tamayo, a social worker called by the minor's counsel, testified as an expert in risk assessment and mental health. Tamayo opined that it was not in the minor's best interests to be returned to the parents' care at this time. He believed that the personality disorders ascribed to the parents by Dr. Ruebsamen are resistant to treatment and require years of therapy to overcome. Until treated, those disorders would put the minor at risk of emotional or even physical abuse if she were returned to their care. Tamayo had no concerns about the minor continuing unsupervised overnight visits at the parents' home. However, Tamayo had not met with the parents in over two years, prior to the current dependency proceedings, had not spoken to the minor's therapist in more than two years and had not observed and assessed the minor in over two months.

The father also testified at the hearing. He stated that he and his wife were, with the help of their therapist, learning the reasons underlying the minor's behavior, which has assisted them in modifying their approach to parenting her. They now understand

that what happened with the minor being removed from their home was not the minor's fault, and acknowledge that they have a great deal to learn in order to better understand how and why the minor reacts as she does.

The court, following the close of evidence and counsels' arguments, found that the parties had sufficient notice that the interim review would consider whether or not the minor should be returned to the parents' care and had a sufficient opportunity to present evidence on that subject, so there was no prejudice in granting the oral section 388 petition. On the substance, the court found that the circumstances had changed and there was sufficiently more evidence in the reports and the testimony that was different than what was presented at the six month review hearing. The court noted that there would be continuing supervision of the family after the minor's return and that, so long as the parents "continue to be offered and continue to engage in the Family Maintenance Services case plan" there would not be a substantial risk of detriment to the minor's "safety, protection, or physical or emotional well-being." Accordingly, the court ordered the minor returned immediately to her parents' care under a plan of family maintenance.

## II. DISCUSSION

### A. *The minor's due process rights were not violated*

Section 388 permits any person having an interest in the child to petition for a hearing to change, modify, or set aside any order of court previously made on grounds of change of circumstance or new evidence.[4] (*In re Lesly G.* (2008) 162 Cal.App.4th 904,

---

[4] Section 388, subdivisions (a) and (d), provide, in pertinent part: "(a)(1) Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . or the child himself . . . through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . . The petition shall be verified . . . and shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order. [¶] . . . [¶] (d) If it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . , the court shall order that a hearing be held and shall give prior (continued)

7

912.)  Such a motion requires the petitioner to demonstrate by a preponderance of the evidence that new or changed circumstances warrant a change in the prior order to promote the best interest of the child.  (*In re S.J.* (2008) 167 Cal.App.4th 953, 959.)  "We review the grant or denial of a petition for modification under section 388 for an abuse of discretion."  (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228.)

The minor contends that her fundamental right to due process was violated by the court setting a contested hearing based on an oral, unverified petition.  Section 388 requires that a verified petition be filed before the court may consider amending its prior orders.  Further, by denying the minor's request for a continuance, the minor was denied notice and an opportunity to adequately prepare for the contested hearing.

Section 388 "contains procedural safeguards designed to protect the due process rights of those whose interests will likely be affected by the decision."  (*In re Nina P.* (1994) 26 Cal.App.4th 615, 622, disagreed with on other grounds in *San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882.)  "In juvenile dependency litigation, due process focuses on the right to notice and the right to be heard."  (*In re Matthew P.* (1999) 71 Cal.App.4th 841, 851.)  Here, even though no written verified petition under section 388 was filed, the minor had both sufficient notice and a sufficient opportunity to be heard.

We first examine the issue of notice.  The report prepared and filed by the Department in connection with the July 9, 2012 interim review hearing expressly indicated that return to the parents was under consideration.  At the July 9, 2012 hearing, the Department asserted it would likely be recommending the minor's return to her parents' care within 30 days and requested a continuance of the hearing for that purpose.  The court granted a continuance and set the matter for hearing on August 6, 2012.

notice, or cause prior notice to be given, to the persons and in the manner prescribed by Section 386."

8

At the August 6, 2012 hearing, the social worker presented the formal recommendation that the minor be returned to the parents' care under a plan of family maintenance. The minor's counsel objected. However, the court overruled the objection, treated the recommendation as an oral section 388 petition and set the matter for a contested hearing on August 15, 2012. This was more than adequate notice of the proposed modification of the court's prior orders.

We next examine whether the minor had a sufficient opportunity to be heard. At the contested hearing, minor's counsel presented expert testimony and cross-examined the witnesses presented by the Department and the parents. Although minor's counsel renewed her objection to having a hearing on the subject of the minor's return without a section 388 petition being filed, she never suggested there were further witnesses or evidence that could be presented on behalf of the minor if the matter were continued or postponed until such time as a written petition were filed. She presented her argument, based on the evidence, why she believed it was not in the minor's best interest to return to her parents' care. The court found in favor of the parents and the Department on this question based on the evidence presented by both sides.

Accordingly, we find that the minor's due process rights were not violated by the court deeming the Department's request for a continuance an oral section 388 petition and subsequently setting a contested hearing.

B.      *There was sufficient evidence to support the court's order*

Alternatively, the minor argues that there was insufficient evidence to support the court's conclusion there were changed circumstances that would allow her to return to her parents' care. The parents' psychological evaluation indicated they both had personality traits that were resistant to change, and those traits would put the minor at risk of continued emotional abuse and neglect.

We disagree that there was insufficient evidence to support the court's conclusion. The Department presented expert testimony indicating that it was in the minor's best

interest to return to the care of her parents. Both the parents and the minor wanted that result, and social worker Quion testified that the minor's therapeutic progress would be hindered by further delays in establishing permanency. The parents were engaged in individual therapy, were doing collateral work with the minor's therapist and were working with the minor's psychologist in adjusting her medications. Quion testified the parents were open to new parenting methods and sought other opinions and assistance both in parenting the minor and her sibling, as well as in managing their own emotions regarding the children.

The father testified that he and his wife, with the assistance of their therapist, were learning the reasons behind the minor's behavior, and based on that information, were modifying their approach to parenting her. They do not blame the minor for the behavior that led to her removal from their home, but further acknowledge they have much more to learn in order to better understand the child.

While the minor's expert, Tamayo, testified that return would not be in the minor's best interest, his conclusion was based principally on the parents' psychological evaluation. Tamayo had not had any contact with the parents for the past two years and had not observed or assessed the minor in the prior six months.

The dependency court, in announcing its findings, acknowledged the "very dismal view [of the parents] that is presented in the psychological evaluation." However, it found those issues were "not so insurmountable as to preclude hope of Family Reunification" and the parents had, so far, been fully engaged in the services offered. The dependency court found it significant that, even after the minor's return to the parents' care, the family would still be under some level of ongoing supervision. Under those circumstances, the court determined it was better for the minor to be returned to her parents and her sister, subject to that ongoing supervision, rather than have her remain in foster care for an extended period of time with continuing family reunification services.

10

The dependency court's decision was not arbitrary or capricious and there was ample evidence to support its findings both that there was a change in circumstances as well as that it was in the best interests of the minor to be returned to her parents' care under a plan of family maintenance.

## III. DISPOSITION

The order is affirmed.

_____

Premo, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Elia, J.

11