126 Cal.Rptr.2d 342 (2002)
102 Cal.App.4th 1284
In re CATHERINE H., a Person Coming Under the Juvenile Court Law.
San Bernardino County Department of Children's Services, Plaintiff and Respondent,
v.
Janice H., Defendant and Appellant.
No. E030491.
Court of Appeal, Fourth District, Division Two.
October 18, 2002.
*343 Melissa A. Chaitin, under appointment by the Court of Appeal, for Defendant and Appellant.
Alan K. Marks, County Counsel, Regina A. Coleman and Joanne Fenton, Deputy County Counsel, for Plaintiff and Respondent.
Sharon S. Rollo, under appointment by the Court of Appeal, Chatsworth, for Minor.
Certified for Partial Publication.[*]

OPINION
RICHLI, J.
When the juvenile court takes custody away from a legal guardian previously appointed, *344 by the family court, without terminating the guardianship, does a parent have the right to seek to regain custody? The juvenile court here said no. We say yes.

I

FACTUAL AND PROCEDURAL BACKGROUND
Janice H. is the mother of Catherine H. and her older sister, Theresa H. (who is not a party to this appeal). When this case was filed, Catherine was 12; she is now 14.
Janice suffers from mental illness. In August 1999, she was twice involuntarily hospitalized. Florence A., Janice's mother, took Theresa and Catherine into her care. Upon Janice's release, Florence filed a guardianship petition in family court. On August 26, 1999, the family court appointed Florence as temporary guardian; on June 22, 2000, it appointed her as permanent guardian.
On May 26-27, 2001, Florence left four minors home overnight without any adult supervision: Catherine, Theresa, one of Florence's grandsons, and one of Theresa's friends. The only other adult in the house was Florence's son Daniel, who was schizophrenic and incapable of looking after the children. Florence's grandson amused himself by throwing Molotov cocktails into traffic. When the police responded, Theresa admitted that she and her friend had been drinking alcohol and smoking marijuana. Catherine was detained and placed in a foster home. Florence told social workers that she was too old to care for Catherine properly, and she felt it was in Catherine's best interest to remain in foster care.
On May 30, 2001, the San Bernardino County Department of Children's Services (the Department) filed a dependency petition in juvenile court as to Catherine, alleging that Florence had failed to supervise or protect her. (Welf. & Inst.Code, § 300, subd. (b).) There were no allegations regarding Janice. The next day, at the detention hearing, the juvenile court allowed Florence to have unsupervised visitation; it allowed Janice to have supervised visitation.
On July 31, 2001, the date set for the jurisdictional/dispositional hearing, Florence filed a written waiver of reunification services. The juvenile court accepted her waiver. Florence noted, however, that she was not consenting to terminate the guardianship.
Janice's counsel announced that Janice was seeking custody and asked the juvenile court to set a contested hearing. Minor's counsel objected that Janice did not have standing to contest any jurisdictional/dispositional issues. The Department's counsel likewise objected: "[T]he Court is removing custody from the guardian, and we're not terminating the guardianship, so [Janice] at this point does not have [the] right to custody." The juvenile court denied Janice's request, ruling that: "[Janice] ... does not have standing in which to object to the J.D...." However, it continued the hearing, partly to allow Janice's counsel "to bring forth any case law which would prove the Court wrong."
On August 21, 2001, at the continued hearing, Janice was not present. Janice's counsel did not contest jurisdiction; however, she reiterated her request for a contested dispositional hearing. Counsel for the Department and for the minor objected again. They argued: "[I]f [Janice] wishes to do anything, I think [she] has to file a [Welfare and Institutions Code section] 388 [petition]." The juvenile court agreed that: "[Janice's] correct course of action would be [to file] a [Welfare and *345 Institutions Code section] 388 petition." It ruled that: "[Janice] does not have standing to set a contested [jurisdictional/dispositional hearing]."
The juvenile court then found the allegations of the petition true. It declared Catherine a dependent and formally removed her from Florence's custody. It also selected long-term foster care as her permanent plan.

II

REFUSAL TO HOLD A CONTESTED DISPOSITIONAL HEARING
Janice contends the juvenile court erred by denying her request for a contested hearing. In her opening brief, she relied on Welfare and Institutions Code section 366.3, subdivision (b). This provision applies to proceedings to terminate a guardianship established by the juvenile court under Welfare and Institutions Code section 360 or 366.26. It provides that: "Unless the parental rights of the child's parent or parents have been terminated, they shall be notified that the legal guardianship has been revoked or terminated and shall be entitled to participate in the new permanency planning hearing." She argued that there had been a "de facto revocation of the guardianship," and hence she was entitled to participate. The Department argued that this provision did not apply at a jurisdictional/dispositional hearing and that the guardianship had not been terminated.
We requested further briefing. We noted that generally, when the juvenile court removes a child from a parent or guardian's custody, it must consider placing that child with any noncustodial parent who so requests. (Welf. & Inst.Code, § 361.2, subd. (a).) We asked whether the juvenile court prejudicially erred by violating this provision. In response, both Janice and Catherine argued that it did. It is perhaps not surprising, in light of our request for further briefing, that we agree. We therefore do not reach the applicability of Welfare and Institutions Code section 366.3.
Welfare and Institutions Code section 361.2, subdivision (a), as relevant here, provides: "When a court orders removal of a child ..., the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." Janice fell squarely within the terms of this provision. The juvenile court was ordering Catherine removed from Florence's custody; Janice was a parent with whom Catherine was not residing before the petition was filed; and Janice was requesting custody.
The Department argues that Welfare and Institutions Code section 361.2, subdivision (a) applies only to a parent "who is at that time entitled to custody, not one whose right of custody has been supplanted by a guardianship...." Not so. This provision is designed to allow the court to place the child in the custody of a parent who is not otherwise entitled to custody. (In re Sarah M. (1991) 233 Cal. App.3d 1486, 1495-1496, 285 Cal.Rptr. 374, disapproved on other grounds in In re Chantal S. (1996) 13 Cal.4th 196, 204, 51 Cal.Rptr.2d 866, 913 P.2d 1075.) Indeed, "noncustodial" is often used as a shorthand term for "a parent of the child, with whom the child was not residing." (E.g., In re Erika W. (1994) 28 Cal.App.4th 470, 475, *346 33 Cal.Rptr.2d 548.) Either term would include a parent whose child is in a guardianship.
Once a petition has been filed, the juvenile court has exclusive jurisdiction over custody of the childspecifically including any guardianship proceedings. (Welf. & Inst.Code, §§ 304, 728, subds. (a), (f); Cal. Rules of Court, rule 1429.1(a).) By placing Catherine in long-term foster care, without terminating the guardianship, the juvenile court effectively took physical custody away from Florence while leaving her with legal custody. Thus, she retained the right and the responsibility to make decisions relating to Catherine's health, education, and welfare. (See Fam.Code, § 3006.) The guardianship did not preclude the juvenile court from taking physical custody away from Florence and granting it to someone else. (Welf. & Inst. Code, § 361, subds. (a), (c).) In particular, it did not preclude the juvenile court from granting physical custody to Janice.
The Department also argues that, in a dependency proceeding under Welfare and Institutions Code section 728, subdivision (a) only the social services agency, the child, or the guardian can move to modify or terminate a guardianship previously established under the Probate Code. It concludes that Janice lacks standing. We may assume, without deciding, that the Department's interpretation of this subdivision is correct. Janice, however, was not seeking to modify or terminate the guardianship. The Department was seeking to modify the guardianship, by removing Catherine from Florence's custody. This modification would necessitate a change in placement. Janice merely sought to be heard on the question of placementto argue that Catherine, once removed, should be placed with her rather than in long-term foster care.
Indeed, Welfare and Institutions Code section 728, if it applies here, tends to support Janice's position. It requires that notice of a motion to modify or terminate the guardianship must be given not only to the guardian, but also to the parent. (Welf. & Inst.Code, § 728, subd. (a), incorporating Prob.Code, § 1511, subd.(b).) Notice to the parent may be pretermitted only if the parent has relinquished the child for adoption or the child has been declared free from the parent's custody and control. (Welf. & Inst.Code, § 728, subd. (a), incorporating Prob.Code, § 1511, subd. (f).) Thus, in all other cases, the parent presumably has standing to be heard on the motion.
The Department also argues that Welfare and Institutions Code section 361.2, subdivision (a) "assumes the existence of a competent parent able to immediately assume custody." (In re Zacharia D. (1993) 6 Cal.4th 435, 454, 24 Cal.Rptr.2d 751, 862 P.2d 751.) In Zacharia D., the Supreme Court noted that the father before it was unable to assume custody, because he was incarcerated and because, "according to the uncontroverted testimony of [the] social worker, ... [he] required at least six months of services before he could even attain the parental competence to be able to visit [the child], let alone have custody of him." (Ibid.)
The Department therefore argues that Janice was "mentally ill, frequently homeless and difficult to maintain contact with.... She did not fit the description of a competent parent able to immediately assume custody...." In sharp contrast to the father in Zacharia D., whose parental incompetence was shown by "uncontroverted testimony," Janice was never allowed to present any evidence of her competence. The petition did not contain any allegations concerning her. She had had no opportunity to controvert the evidence *347 of her lack of competence. She was not incarcerated; if given custody, she could also have been given reunification services. (Welf. & Inst.Code, § 361.2, subd. (b)(2).) Thus, we cannot say the outcome of a contested dispositional hearing was a foregone conclusion. In any event, the juvenile court did not have to place Catherine with Janice if it found "that placement with [her] would be detrimental to the safety, protection, or physical or emotional well-being of the child." (Welf. & Inst. Code, § 361.2, subd. (a).) To deny a hearing entirely on the assumption that the juvenile court would have found detriment is to beg the question.
The Department suggests that the order creating the guardianship conclusively established Janice's inability to assume custody. There is an exception to collateral estoppel, however, which allows the relitigation of custody issues in juvenile court even though they have already been litigated in family court. (In re Desiree B. (1992) 8 Cal.App.4th 286, 291-293, 10 Cal.Rptr.2d 254.) Moreover, even if the order could have collateral estoppel effect, it would merely establish that in June 2000, when Florence wanted custody, leaving Catherine with Janice would have been detrimental. (See Fam.Code, § 3041.) It would not establish that in August 2001, when Florence no longer wanted custody (indeed, the juvenile court had found it necessary to take custody away from her), leaving Catherine with Janice would still be detrimental. (People v. Ocean Shore Railroad (1948) 32 Cal.2d 406, 418, 196 P.2d 570 [collateral estoppel "does not apply ... where there are changed conditions and new facts which did not exist at the time of the prior judgment"].)
This brings us to the Department's next argument: that, even assuming the juvenile court had to consider placement with Janice, she was not entitled to a contested hearing on this issue. Welfare and Institutions Code section 361.2, subdivision (a), like other placement provisions (e.g., Welf. & Inst.Code, § 361.3), applies primarily at the dispositional hearing. (In re Jeffrey P. (1990) 218 Cal.App.3d 1548, 1555, 267 Cal. Rptr. 764.) Unless and until parental rights are terminated, a noncustodial parent is entitled to notice of all proceedings involving the child. (Welf. & Inst.Code, § 302, subd. (b).) Moreover, a noncustodial parent is entitled to be present, at least at the jurisdictional and dispositional hearings. (Welf. & Inst.Code, §§ 332, subd. (e), 335, subd. (a), 349, 358, subd. (a); Cal. Rules of Court, rule 1410(b)(2).) At the dispositional hearing, "the court shall hear evidence on the question of the proper disposition to be made of the child." (Welf. & Inst.Code, § 358, subd. (a), italics added.) "Before determining the appropriate disposition, the court shall receive in evidence the social study of the child made by the social worker, any study or evaluation made by a child advocate appointed by the court, and other relevant and material evidence as may be offered." (Welf. & Inst.Code, § 358, subd. (b), italics added.) This necessarily means that a noncustodial parent has not only the right to be present, but also the right to offer evidence.[**]
Constitutional considerations confirm our conclusion. "It is well established that, if reasonably possible, statutory provisions should be interpreted in a manner that avoids serious constitutional questions. [Citations.]" (NBC Subsidiary (KNBC-TV), Inc. v. Superior Court (1999) 20 Cal.4th 1178, 1197, 86 Cal.Rptr.2d 778, 980 P.2d 337.) Whenever Welfare and Institutions Code section 361.2, subdivision (a) applies, the noncustodial parent's interest *348 in custody of the child is at stake. Indeed, the noncustodial parent is presumptively entitled to custody. "A parent's interest in the companionship, care, custody and management of his children is a compelling one, ranked among the most basic of civil rights. [Citation.]" (In re Marilyn H. (1993) 5 Cal.4th 295, 306, 19 Cal.Rptr.2d 544, 851 P.2d 826.) "Before the state can deprive a parent of this interest, it must provide the parent with a hearing and an opportunity to be heard." (In re Sara D. (2001) 87 Cal.App.4th 661, 668,104 Cal.Rptr.2d 909, fn. omitted.)
It has been held that denying a parent's request for a contested review hearing violates due process. (In re James Q. (2000) 81 Cal.App.4th 255, 265-267, 96 Cal. Rptr.2d 595; Ingrid E. v. Superior Court (1999) 75 Cal.App.4th 751, 755-760, 89 Cal. Rptr.2d 407.) At a review hearing, the juvenile court must return the child to the custody of the parent or guardian, unless it finds that this would present a substantial risk of detriment. (Welf. & Inst.Code, §§ 366.21, subds. (e), (f), 366.22, subd. (a).) Likewise, at a dispositional hearing at which Welfare and Institutions Code section 361.2, subdivision (a) applies, the juvenile court must place the child in the custody of the noncustodial parent, unless it finds that this would be detrimental. Thus, at such a dispositional hearing, the parent, the child, and the state all have virtually the same interests as at a review hearing.
We need not decide whether the juvenile court here actually violated due process. It is enough that interpreting the dependency statutes as allowing the juvenile court to do what it did would present serious due process issues; interpreting them as forbidding it is not only the better reading, but also an indisputably constitutional one. We therefore hold that a noncustodial parent seeking custody after his or her child has been removed from the custody of a predependency guardian has standing to request a contested dispositional hearing and, when the hearing is held, to appear, to be heard, and to present evidence.
We also need not decide whether the juvenile court could have required Janice to make an adequate offer of proof as a condition of granting her request for a contested hearing. (Compare In re Tamika T. (2002) 97 Cal.App.4th 1114, 1122-1123, 118 Cal.Rptr.2d 873 with In re James Q., supra, 81 Cal.App.4th at pp. 266-267, 96 Cal.Rptr.2d 595.) It is clear that it would have denied her request based on lack of standing, no matter what offer of proof she made. Any offer-of-proof requirement was excused as futile. (See Civ.Code, § 3532["[t]he law neither does nor requires idle acts"]; cf. Evid. Code, § 354, subd. (b); People v. Welch (1993) 5 Cal.4th 228, 237, 19 Cal.Rptr.2d 520, 851 P.2d 802.)
Finally, we need not decide what the outcome would be if the juvenile court had established the guardianship in the dependency proceeding. Typically, that would mean there had already been: (1) a dispositional hearing, at which the juvenile court found it necessary to remove Catherine from Janice's custody and, absent some exception, ordered reunification services for Janice (Welf. & Inst.Code, §§ 358, 361, subd. (c), 361.5, subds. (a), (b), (c); see also Welf. & Inst.Code, § 360, subd. (a)); (2) a review hearing, at which the juvenile court found Janice had been offered or provided reasonable services and that returning Catherine to Janice's custody would create a substantial risk of detriment (Welf. & Inst.Code, §§ 366.21, subds. (e), (f), (g)(1), 366.22, subd. (a)); and (3) a permanency planning hearing, at which the juvenile court found that legal guardianship was the appropriate permanent plan (Welf. & *349 Inst.Code, §§ 361.5, subd. (f), 366.26, subds. (b)(3), (c)(4), (d)). Moreover, under this scenario, if the juvenile court revoked or terminated the guardianship, Janice would have a statutory right to participate in the new permanency planning hearing. (Welf. & Inst.Code, § 366.3, subd. (b).)
Even under the state-law standard of prejudice, the erroneous denial of a contested hearing is a miscarriage of justice. (Adoption of Baby Girl B. (1999) 74 Cal.App.4th 43, 55, 87 Cal.Rptr.2d 569 [Fourth Dist., Div. Two]; Kelly v. New West Federal Savings (1996) 49 Cal. App.4th 659, 677, 56 Cal.Rptr.2d 803.) There may be an exception where the record not only shows what evidence the appellant would have offered, but also demonstrates that that evidence would not have changed the result (see Adoption of Baby Girl B., supra, at pp. 55-56, 87 Cal. Rptr.2d 569); this, however, is not such a case. Certainly the record before us suggests that Janice will have, at best, an uphill battle obtaining custody on remand. Nevertheless, she is entitled to an opportunity to develop a different record by introducing whatever evidence in her favor there may be.
At oral argument, the Department argued that Janice was not prejudiced because she did not attend the continued dispositional hearing on August 21, 2001; thus, it argued, even if the juvenile court had granted her request for a contested hearing, she could not have presented evidence. We disagree, for two reasons. First, Janice's testimony was not required. Janice's attorney was present; she may well have been ready to present other evidence that placement with Janice was in Catherine's best interest. Indeed, we can imagine sound strategic reasons for not calling Janice to testify. Second, if the juvenile court had ruled that Janice had standing, it could haveand, most likely, would havecontinued the hearing. That is the customary result of a request for a contested hearing. Moreover, the juvenile court had continued the hearing expressly to permit further argument on Janice's standing. The parties could reasonably expect that the hearing would be limited to that issue. After all, if it ruled (as it did) that she did not have standing, there would be no point in having witnesses ready and waiting. If, on the other hand, it ruled that she did have standing, it could set a contested hearing for a later date.
We therefore conclude that the juvenile court erred prejudicially by denying Janice's request for a contested dispositional hearing on the ground that she lacked standing.

III

DISPOSITION
When this appeal was in its early stages, we questioned whether Janice had standing to appeal. We asked the parties to file letter briefs on this issue. However, we reserved ruling on it. Now, having held that Janice had standing below, we necessarily also hold that she likewise had standing to appeal.
Alternatively, however, even if she did not have standing below, she would still be aggrieved by the trial court's ruling that she did not have standing. Thus, she would still have standing to appeal. (Code Civ. Proc., § 902; In re Stewart (1969) 276 Cal.App.2d 211, 215, 80 Cal.Rptr. 738; Ginsberg Tile Co. v. Faraone (1929) 99 Cal.App. 381, 389, 278 P. 866.) Any other approach would improperly conflate standing to appeal with the merits. True, a vision of the world in which only litigants with meritorious appeals would have standing has some allure; in practice, however, it would mean we would regularly have to pass on the merits of an appeal in *350 the context of a motion to dismiss, without the benefit of the record.
The jurisdictional provisions of the order appealed from, including the finding that the allegations of the petition are true and the declaration that Catherine is a dependent child of the court, are affirmed. The dispositional provisions of the order, including the findings that there is no previously noncustodial parent who desires custody, that Catherine's placement is appropriate and necessary, and that long-term foster care is the appropriate permanent plan, are reversed. On remand, the juvenile court is directed to hold a new dispositional hearing and to allow Janice, through her counsel, to appear, to be heard, andprovided she makes a timely and appropriate requestto present evidence at that hearing.
We concur: HOLLENHORST, Acting P.J., and McKINSTER, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of footnote 1.
[**] See footnote *, ante.