[No. F041891. Fifth Dist. July 17, 2003.]

In re CARRIE W. et al., Persons Coming Under the Juvenile Court Law.

FRESNO COUNTY DEPARTMENT OF CHILDREN & FAMILY
SERVICES, Plaintiff and Respondent, v.
DELLA Z., Defendant and Appellant.

#### COUNSEL

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Phillip S. Cronin, County Counsel, and Howard K. Watkins, Deputy County Counsel, for Plaintiff and Respondent.

#### OPINION

**VARTABEDIAN, Acting P. J.—**  When a guardian, whose guardianship responsibilities were initiated as a permanent plan in a dependency proceeding, becomes incapable of providing custody for a minor, causing the change of custody to a new party under a permanent plan of long-term foster care, should the juvenile court terminate the guardianship because the guardianship is not permitted by law to coexist with the new permanent plan? We determine that such a termination is correct.

The juvenile court obtained dependency jurisdiction over four siblings, two boys and two girls, due to their parents' failure to protect and provide for them. The children were all placed with their maternal grandmother, appellant Della Z. After reunification efforts with the parents failed, a permanent plan of legal guardianship with the grandmother was established. Dependency jurisdiction continued. The oldest child sexually assaulted his sister, the second oldest child, and was removed from the home of the grandmother. The misbehavior of the remaining three children resulted in their removal from grandmother's care, as well, although the guardianship continued. The younger boy was returned to his grandmother's care; the other three remained separately in group homes or foster homes. A hearing was held and the court terminated legal guardianship as to the three children not in grandmother's care and ordered a permanent plan of long-term foster care. The court granted de facto parent status to the grandmother. The grandmother appeals, claiming she did not receive adequate notice and the trial court should have allowed

her to remain the legal guardian of the children at the same time it ordered a permanent plan of long-term foster care. We affirm.

## BACKGROUND

On August 9, 1994, a Welfare and Institutions Code section 300 petition was filed seeking dependency jurisdiction over Jesse (born Aug. 1988), Carrie (born Jan. 1990), and David (born March 1992). The Fresno County Department of Children & Family Services (Department) recommended that the children live with the maternal grandmother, appellant (hereafter grandmother). Jurisdiction was established and services were ordered for the parents, although the father's whereabouts were unknown. The children remained with grandmother.

A fourth child, Crystal, was born in October 1994, and dependency was established shortly after her birth. Her case was consolidated with the case of her siblings. Crystal was allowed to reside with her mother while the mother was in a drug treatment program. The mother dropped out of the program, and Crystal went to live with grandmother.

After the parents failed to comply with the reunification plan services offered to them, the Department recommended that a permanent plan of long-term guardianship with the grandmother be established. Reunification services were terminated for the parents and the trial court established legal guardianship as the permanent plan. Grandmother was appointed as the legal guardian of the four children, and guardianship papers were issued. It was ordered that the children remain dependent children of the juvenile court.

The matter was reviewed several times, with the children remaining dependents of the court and the grandmother remaining as their legal guardian. Over the course of time all of the children exhibited behavioral problems. The family received extensive services to attempt to control the myriad of problems they were experiencing.[1]

On July 10, 2000, a Welfare and Institutions Code section 387 supplemental petition was filed. (All further undesignated statutory references are to the Welfare and Institutions Code.) The supplemental petition alleged Jesse had attempted to sexually molest Carrie, as reported by Carrie. Grandmother, as guardian, was unable to protect Carrie and the other children from Jesse and therefore Jesse was in need of a more restrictive placement.

A hearing was held on the supplemental petition. The Department did not seek to set aside the guardianship at that time, but it wanted to move Jesse to

---

[1] In the reports prepared by the Department, the Department states that although grandmother was the children's legal guardian the matter needed to remain in dependency so the grandmother could receive funding for the children.

a foster home. The court questioned what the proper procedure would be to put Jesse in foster care without setting aside the guardianship. The court continued the matter.

At the continued hearing on August 2, 2000, the court ordered the guardianship to continue with the grandmother; Jesse was transferred to a higher level of care outside the home of the grandmother. (The parties did not answer nor did the court address the previous question regarding the proper procedure to follow.)

On August 28, 2000, a supplemental petition was filed based upon grandmother's report that, after Jesse was removed from her home, the remaining siblings became out of control; she could no longer care for them. A therapist for the children filed a letter stating that the children required extraordinary care and energy. The grandmother was overwhelmed and had her own personal difficulties.

A jurisdiction hearing was held on the supplemental petition on September 26, 2000. The district attorney stated that grandmother needed to be represented by an attorney. The court ordered the matter be sent to mediation, settlement conference, and then trial.

At an October 5, 2000, hearing, an attorney was appointed to represent grandmother. She was advised that the court could remove the children from her and terminate her rights to the children. Grandmother submitted the matter on the amended petition.

A disposition hearing was held on October 23, 2000. At the hearing, the court found the children to be dependent pursuant to section 360, subdivision (d). The children were removed from the custody of grandmother and placed in licensed foster care. Services and visitation for grandmother and the children were ordered.

A review hearing was held on June 12, 2001. Grandmother asked that David be returned to her home, noting that she had complied with all of the services offered to her. The court ordered an extended visitation between David and the grandmother; reunification services were continued for the other three children. On August 13, 2001, the court ordered that David's placement change from extended visits to family maintenance with grandmother.

At the review hearing held on January 10, 2002, the court adopted the Department's recommendation of six more months of services regarding the guardianship as to Jesse, Carrie and Crystal. Family maintenance was continued for David. The court granted the orders as requested.

Another review hearing was held on July 9, 2002. The report prepared for the hearing recommended that reunification services be terminated as to

Jesse, Carrie and Crystal and the matter be sent to assessment for a permanent plan. The social worker opined it was unlikely that Jesse, Crystal and Carrie would be returned to grandmother's care. It was recommended that services be continued for David. Grandmother submitted the case on the report as to Jesse, Carrie and David. Grandmother agreed that it was not in Jesse's and Carrie's best interests to attempt to place them with her at that time and that long-term foster care should be their plan. As for Crystal, grandmother requested that the matter be set for trial. The court set the matter for trial for Crystal. For Jesse and Carrie, the court found grandmother's progress inadequate.

Trial regarding Crystal was set for August 14, 2002. On that date, counsel for Crystal requested a three-month continuance because grandmother was the only family tie that Crystal had, and conjoint therapy with Crystal, David and grandmother had not occurred as ordered, through no fault of grandmother. The Department and grandmother agreed with Crystal's counsel. The court granted a three-month continuance.

Counsel for grandmother filed a petition for modification on September 24, 2002, seeking a continuance so that Crystal, Jesse and grandmother could participate in more therapy. The matter was continued on October 15, 2002.

One of Crystal's social workers filed a letter stating that grandmother had made inappropriate comments to Crystal, giving her false hopes that she would be able to move home. In addition, grandmother took Crystal home during one visit, which was against directions to grandmother. David and Crystal's treating clinician stated in a letter that David's and Crystal's anxiety levels dramatically rise when they are in each other's presence. After conjoint therapy sessions, Crystal's behavior deteriorated for two days after and similar deterioration was noted in Crystal's behavior after weekend visits with grandmother. The clinician recommended continued therapy.

The section 388 motion was heard on October 22, 2002. Grandmother's attorney stated that the purpose of the motion was to get conjoint therapy sessions "going." However, that had occurred. Counsel responded to the letters from the social worker and clinician by stating that grandmother encouraged Crystal to behave and had told Crystal she would like for her to come home. Grandmother brought Crystal home on one occasion because Crystal was dressed inappropriately for going out to dinner. The attorney for Crystal asked that visitation with grandmother return to supervised visits. Crystal's attorney also asked the court to proceed cautiously in light of the fact that at the age of seven Crystal has already worked herself up to the more intensive care of a group home. Counsel for grandmother stated that grandmother wished to make a statement rather than set the matter for trial.

Grandmother repeated what her counsel had already told the court. Grandmother was concerned about Crystal's moving into a group home. The parties submitted the matter. The court ordered supervised visits and conjoint counseling twice a month, to eventually increase to once per week.

A report was prepared for a section 366.26 selection and implementation hearing for Jesse and Carrie. The report recommended long-term foster care be implemented as the permanent plan for Jesse and Carrie. In addition, the report recommended that the guardianship be set aside. The report states that notice was given by first class mail on September 12, 2002, to grandmother's attorney, and grandmother was given notice by phone on November 5, 2002.

A section 366.22 permanency review status report was prepared regarding Crystal. It noted that grandmother had completed all of the plan components. The report recommended that family reunification services be terminated and Crystal be transferred to long-term foster care. The report also recommended that the guardianship be set aside. The report stated that notice was given to grandmother by "certified or return receipt requested" mail on October 11, 2002.

On November 12, 2002, the court held three hearings seriatim. The first hearing was a family maintenance review for David. Grandmother submitted the matter based upon the report, and the trial court ordered continued family maintenance.

Next the court considered the section 366.26 selection and implementation decision for Jesse and Carrie. Counsel for grandmother expressed her desire to have guardianship remain while the children were placed in long-term foster care. The court replied that it did not think it could do that. Counsel for grandmother stated that grandmother had been there for the children all along, she was involved in their schooling, and she wanted to be involved in future counseling when it was appropriate. The court asked counsel if she wanted the matter set for trial. Counsel responded that there was no evidence to present, just argument, and she had already done that, so she did not request a trial. The Department objected to grandmother's proposed plan. The trial court set aside the guardianship and ordered long-term foster care as the permanent plan for Jesse and Carrie. Counsel for grandmother then made a motion that grandmother be granted de facto parent status. The trial court granted the motion over the objection of the Department.

A section 366.22 permanency review hearing was then held for Crystal. Counsel for grandmother again offered no evidence and argued the matter, asking that guardianship remain intact and noting that grandmother had complied with the services. Counsel argued that having complied, services

must not have been reasonable—otherwise Crystal would have been returned to grandmother's home. If services were terminated, counsel asked that counseling still be ordered. Counsel for Crystal asked that counseling continue but asked that the matter go directly to long-term foster care so the Department could have full authority over the treatment needed for Crystal. The court found that reasonable services had been provided and that the progress of the guardian had been unsuccessful. The court ordered a permanent plan of "planned permanent living arrangement." The court ordered continued counseling. It set aside the guardianship and granted grandmother de facto parent status.

Grandmother appeals from the November 12, 2002 termination of legal guardianship.

In March of this year, after the appellant's opening brief was filed but before respondent's brief was due, the parties filed a joint application and stipulation to vacate the November 12, 2002 order and to issue an order for remand and immediate remittitur. We directed respondent to file briefing on the merits of the issues raised in appellant's opening brief.

## DISCUSSION

We begin by pointing out that although the appellant and respondent treat the November 12, 2002 hearing as a unitary hearing and argue as if all the children's cases are in the same procedural posture; this is not so. David was continued in family maintenance; guardianship was not terminated as to him. Consequently, grandmother's arguments regarding termination of guardianship have no application to David. Jesse's and Carrie's hearings were at the stage of selection and implementation of permanent plan under section 366.26. The hearing for Crystal was a section 366.22 permanency review hearing.

A. *Notice*

Grandmother contends the court's termination of her guardianship was improper because she was deprived of her due process rights to proper notice and an opportunity to be heard. Grandmother claims that she was entitled to 15 days' notice and a copy of the petition to modify and terminate her guardianship. To first receive all of this in writing an hour before the hearing when termination of guardianship was at stake, argues grandmother, did not allow her sufficient time to prepare a defense to the allegations recommending the termination. She asserts that reversal is automatic when notice requirements are not met. In addition, she argues that the notice statute is mandatory and failure to comply with such a statute deprives a court of jurisdiction to proceed. Therefore, she claims, the orders of the juvenile court that occurred at this hearing should be invalidated.

Grandmother asserts the notice requirements relevant here are contained in California Rules of Court, rule 1429.1(e) and Probate Code section 1511. Grandmother is mistaken.

California Rules of Court, rule 1429.1(e) refers to the termination or modification of previously established guardianships and references section 728. Section 728 governs the juvenile court's power to terminate or modify a guardianship of a minor that was previously established under the Probate Code. Rule 1429.1(e) states that notice requirements under Probate Code section 1511 shall apply; the 15-day notice provision found in this section requires that the notice "shall be accompanied by a copy of the petition."

The guardianship here was not established under the Probate Code; it was established under the dependency laws contained in the Welfare and Institutions Code. Grandmother's citations are clearly not applicable. ■ Rule 1429.1(d) states that petitions to terminate or modify guardianships appointed at a section 366.26 hearing shall be heard in juvenile court under rule 1466(c). The inapplicability of Probate Code section 1511 is expressly set forth in section 366.4, subdivision (a). It provides, "Any minor for whom a guardianship has been established resulting from the selection or implementation of a permanent plan pursuant to Section 366.26 is within the jurisdiction of the juvenile court. For those minors, Part 2 (commencing with Section 1500) of Division 4 of the Probate Code, relating to guardianship, shall not apply. If no specific provision of this code or the California Rules of Court is applicable, the provisions applicable to the administration of estates under Part 4 (commencing with Section 2100) of Division 4 of the Probate Code govern so far as they are applicable to like situations." Probate Code section 1511 is contained within part 2 of division 4 of the Probate Code.

The applicable rule for petitions to terminate a guardianship established by the juvenile court is California Rules of Court, rule 1466. It requires that, under rule 1460, the notice be served on the guardian "not less than 15 court days before the hearing date." Unlike Probate Code section 1511, there is no specific requirement that the petition in question itself accompany the notice. In addition, rule 1466 states that the procedures set forth in rule 1432 should be followed. Rule 1432 governs petitions for modification pursuant to section 388.

The report regarding Carrie and Jesse recommending termination of grandmother's guardianship was clearly not served on grandmother. She received notice by telephone seven days before the hearing, which is clearly inadequate under any of the argued notice provisions; we further assume that service of documents on counsel does not suffice. In any event, respondent claims that grandmother has waived her right to challenge notice at this point because she did not make a timely objection below.

At the hearing for Jesse and Carrie, counsel for grandmother objected to the termination of guardianship and then rejected the trial court's offer to set the matter for trial. In rejecting the offer to set the matter for trial, counsel stated that there was no evidence to present, only argument. Grandmother did not assert a lack of notice nor did she want a continuance, as evidenced by her rejection of the court's offer to set the matter for trial. At no time did grandmother claim the trial court lacked complete and/or accurate information concerning the children and the guardianship. Neither did she allege that there was not a change in circumstances warranting reassessment of the guardianship.

" ' "An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the [trial] court by some appropriate method .... The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver .... Often, however, the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial." [Citation.]' [Citations.]

"Moreover, it would be inappropriate to allow a party not to object to an error of which the party is or should be aware, ' "thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not." [Citation.]' [Citation.]

"Appellate courts have applied the waiver doctrine in dependency proceedings in a wide variety of contexts, including cases involving failures to obtain various reports required by statute." (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 501–502 [102 Cal.Rptr.2d 196].)

Grandmother waived her objections to proper notice of the termination of the guardianship as to Jesse and Carrie.

While grandmother makes this argument as to all the children, she fails to point out that the termination of her guardianship of Crystal occurred as a result of a separate report and occurred at a separate hearing, although that hearing occurred directly following the hearing for Jesse and Carrie. As previously set forth, the report prepared for Crystal's hearing stated that notice had been sent to grandmother on October 11, 2002. Grandmother has not shown that this notice was not proper and did not contain all the required information. Also, grandmother did not object to a lack of notice at the hearing. Although grandmother argues on appeal that she found out about the

recommendation to terminate the guardianship at the hearing, there is nothing in the record to support this assertion. Grandmother never stated that she was unaware that the Department was recommending a termination of guardianship.

Included in grandmother's lack-of-notice argument is the assertion that the notice requirements are mandatory. Thus, argues grandmother, the failure to give notice was a structural error requiring reversal per se. Grandmother's argument is based on the language contained in Probate Code section 1511. As previously set forth, Probate Code section 1511 has no application to the termination of a guardianship created in a dependency proceeding.[2] She thus has failed to make an adequate argument demonstrating that the procedures in question are mandatory and the failure to follow them deprived the court of jurisdiction to hear the matter.

Grandmother asserts that if we find that her counsel waived the issue of notice then her counsel was ineffective in representing her. She claims there was nothing to be lost by making the objection and, if she had objected, grandmother would have at least been entitled to a continuance based on the lack of notice and the Department would have been required to show a change of circumstance.

" 'Where the ineffective assistance concept is applied in dependency proceedings ... [f]irst, there must be a showing that "counsel's representation fell below an objective standard of reasonableness ... [¶] ... under prevailing professional norms." [Citations.] Second, there must be a showing of prejudice, that is, [a] "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citation.]' " (*In re Athena P.* (2002) 103 Cal.App.4th 617, 628 [127 Cal.Rptr.2d 46].)

Assuming, for the sake of argument only, that counsel was ineffective in failing to object to the lack of notice, grandmother has not shown the requisite prejudice. Grandmother has not made any claim or asserted any

---

[2] In *Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535 [126 Cal.Rptr.2d 14] the court held that the failure to file a section 366.21 status report at least 10 calendar days before a hearing to terminate a parent's right to reunification services is a structural error requiring reversal per se. The statute is mandatory and a continuance must be granted or the parent must expressly waive his or her right to the timely service of the report. In reaching its decision, the *Judith P.* court clearly pointed out and relied heavily on the strong interests of the parent at the prepermanency planning stage. The notice requirements here applied to a postpermanency planning hearing and did not involve the rights of a parent but the rights of a guardian appointed as part of the long-term plan for the children. The case of *Judith P.* is distinguishable.

facts to show that a continuance and/or a contested hearing would have altered the result. As acknowledged by her counsel, there were no additional facts to present to the court: the only thing to be presented was in the form of argument. Counsel for grandmother was unfettered in her ability to make an argument regarding the matter.

Respondent submits that grandmother's legal guardianship could only be terminated by means of a section 388 petition for modification and therefore the matter must be reversed and remanded for further proceedings. Although respondent acknowledges that grandmother arguably waived this issue by failing to object below, it claims that a finding of waiver would lead to a determination of ineffective assistance of counsel. It argues that a hearing on a section 388 petition would have resulted in a determinative difference in the outcome because the court would have had to consider the best interests of the children in deciding whether or not to terminate legal guardianship and would have caused the court to understand that the law does not prohibit the coexistence of a guardianship and a permanent plan of long-term foster care.

■ Although a section 388 petition for modification may be utilized to terminate a legal guardianship, the courts have held that there is no requirement that a separate hearing be held on a petition to terminate guardianship. The hearing may be held as part of another regularly scheduled hearing. (*In re Nina P.* (1994) 26 Cal.App.4th 615 [31 Cal.Rptr.2d 687]; *In re Andrea R.* (1999) 75 Cal.App.4th 1093 [89 Cal.Rptr.2d 664]; *San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882 [55 Cal.Rptr.2d 396, 919 P.2d 1329].) The failure to file a section 388 petition and/or hold a separate hearing does not invalidate the court's actions here.

### B. *Coexistence of Guardianship and Long-term Foster Care*

We must now determine if the law prohibits the coexistence of a guardianship and long-term foster care. At more than one hearing the court questioned whether guardianship and long-term foster care could coexist. A definitive answer was never given in the trial court, but the trial court stated its belief the two could not coexist. Whether this question is viewed as trial error, as appellant contends, or ineffective assistance of counsel, as respondent asserts, is not determinative. The trial court suggested it would consider continuing the guardianship while also ordering the children into long-term foster care, but it thought the two could not be ordered at the same time. We can only assume from its ruling that the court acted under the belief the two could not coexist. Should we determine that guardianship and long-term foster care are permitted to coexist, it would be necessary for us to remand for a rehearing on the termination of the guardianship of grandmother to Jesse, Carrie and Crystal.

Grandmother claims that certain provisions of the Welfare and Institutions Code, as well as the California Rules of Court, imply that the court has discretion to keep a legal guardianship intact if it is in the best interests of the children. After a long-term plan has been established under section 366.26, and dependency is not dismissed, periodic reviews must be held pursuant to section 366.3. Grandmother cites portions of section 366.3 to support her contention. First she points to section 366.3, subdivision (d)(1). It provides, "(d) If the child is in a placement other than the home of a legal guardian and jurisdiction has not been dismissed, the status of the child shall be reviewed at least every six months. The review of the status of a child for whom the court has ordered parental rights terminated and who has been ordered placed for adoption shall be conducted by the court. The review of the status of a child for whom the court has not ordered parental rights terminated and who has not been ordered placed for adoption may be conducted by the court or an appropriate local agency. The court shall conduct the review under the following circumstances: [¶] (1) Upon the request of the child's parents or legal guardians."

Throughout the Welfare and Institutions Code, reference is made to "parents or legal guardians." Although we have not found any specific section determining the significance of this particular phrasing, the "guardians" portion of "parents or guardians" appears to refer to situations where a child enters the jurisdiction of the dependency court with a guardianship previously established in probate court. This phrasing is meant to include the appropriate legal caretaker of a child within the code sections at the time dependency proceedings are initiated. For example, section 366.26, subdivision (c)(4) provides that, at a permanency planning hearing, if the court finds that termination of parental rights is not in the best interests of the child the court must order either legal guardianship or long-term foster care. This same subdivision goes on to state, "The court shall also make an order for visitation with the parents or guardians unless the court finds ... visitation would be detrimental to the ... child." (*Ibid.*) The statute refers to two types of guardians, one as the guardian appointed in dependency cases as part of a long-term plan and the other in the phrase "parents or guardians" as the equal to the parent in the context of the legal caretaker of the child at the time dependency is initiated.

A distinction between the two types of guardianship was recognized in *In re Heraclio A.* (1996) 42 Cal.App.4th 569 [49 Cal.Rptr.2d 713]. In *Heraclio A.,* guardianship was established as the long-term plan and dependency was dismissed. A petition for modification of the permanent plan was filed seeking to free the child for adoption. The court held that "section 366.4 authorizes jurisdiction by the juvenile court to conduct hearings on petitions to modify guardianship orders." (*Id.* at p. 575.) It looked to the legislative history behind an amendment to section 366.4. It stated, " '[I]t is important to

include guardianships in the dependency law where the guardianship was created as a result of a permanent plan. One problem is with cases where the juvenile court needs to re-examine the guardianship; there is no mechanism in current law to do this .... [¶] This bill statutorily recognizes a second type of guardianship, which is under the jurisdiction of the Juvenile Court and designed for minors who have been permanently removed from their parents' custody. A court may determine that adoption is not in the minor's best interests when a minor is not an infant, has had a continuing relationship with his or her parents, has been placed with a relative or someone else known to the family, or is residing with a family who cannot adopt the child for some reason. The court may then appoint the caretakers as guardians. [¶] The establishment and termination of this type of guardianship is different from that for a Probate Code guardianship (where parents or other interested persons can terminate the guardianship, notice of the guardianship must be given to a number of relatives, etc.). In the "dependency" guardianship, the court has continuing direct responsibility regarding the placement of the minor with the guardians and regarding the termination of the guardianship and establishment of a new guardianship.' " (*In re Heraclio A., supra,* 42 Cal.App.4th at pp. 575–576.)

Grandmother also relies on section 366.3, subdivision (e)(4) (added by Stats. 2002, ch. 785). Her reliance on section 366.3, subdivision (e)(4) fails because this subdivision was not in effect when the challenged hearing was held. In any event, this provision fails to refute our view of the meaning of "parents or guardians."

Grandmother cites *In re Catherine H.* (2002) 102 Cal.App.4th 1284 [126 Cal.Rptr.2d 342] to support her position that legal guardianship and long-term foster care may coexist. In *Catherine H.,* the child had a legal guardianship established in family court. A dependency petition was thereafter filed. The child was adjudged a dependent of the juvenile court and an immediate order for long-term foster care was established. The guardianship was not terminated. The child's mother appealed, arguing the court should have considered placing the child with her pursuant to section 361.2. The appellate court agreed, finding that "a noncustodial parent seeking custody after his or her child has been removed from the custody of a predependency guardian has standing to request a contested dispositional hearing and, when the hearing is held, to appear, to be heard, and to present evidence." (Catherine H. at p. 1292.) The court explicitly stated that it "need not decide what the outcome would be if the *juvenile* court had established the guardianship in the *dependency* proceeding." (*Id.* at p. 1293.)

The court in *Catherine H.* thus recognized a differentiation between guardianships created in family court and those created in dependency

proceedings. Furthermore, although the district court allowed the coexistence of a family court guardianship (even one that existed before the onset of dependency) and long-term foster care, it never discussed the propriety of it. *Catherine H.* does not aid grandmother's position.

The statutes are clear that you cannot have two long-term permanent plans. "At the permanency hearing the court must select one of the statutorily prescribed options." (*In re Tamneisha S.* (1997) 58 Cal.App.4th 798, 804 [68 Cal.Rptr.2d 259].) Thus long-term plans of long-term foster care and legal guardianship established in dependency proceedings cannot coexist. The guardianship here is purely a creature of dependency and was created as part of a long-term plan. Dependency was never dismissed, so the guardianship did not have a life of its own outside of dependency. ▪ We find no statutes allowing the continuance of a guardianship existing only as part of a long-term plan concurrent with long-term foster care, and grandmother has not provided any convincing authority to show otherwise.

The children were removed because the guardian was unable to protect them, grandmother was offered services, and services failed. Legal guardianship in dependency is aimed at providing permanent homes for dependent children; grandmother's home is no longer suitable as a permanent home for Jesse, Carrie and Crystal. If the children are not capable of living in the guardian's home, then this type of placement has failed and nothing in the statutes authorizes guardianship to continue concurrently with long-term foster care.

The trial court noted the familial relationship grandmother has provided to these children and made her a de facto parent. There is nothing in the statutes precluding the court from choosing long-term guardianship in the future if the circumstances change and she is able to fill that role.

Grandmother has failed to show that the trial court erred when it terminated her long-term guardianship as to Jesse, Carrie, and Crystal. We reject the parties' offer of a stipulation to reverse the juvenile court based on the parties' agreement that the instant legal guardianship may continue in effect even though the court ordered a permanent plan of long-term foster care. It is in the public interest that this court render this opinion to make clear that two long-term permanent plans may not coexist.

## DISPOSITION

The judgment is affirmed.

Harris, J., and Cornell, J., concurred.

A petition for a rehearing was denied August 15, 2003, and on July 24, 2003, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 1, 2003.