Filed 7/26/17; Certified for Publication 10/18/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re KAYLA W., a Person Coming Under the Juvenile Court Law. | B277567 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>Y.Q.,<br><br>　　　Appellant. | Los Angeles County Super. Ct. No. CK85916 |

　　　APPEAL from an order of the Superior Court of Los Angeles County, Robert S. Draper, Judge.  Reversed and remanded with directions.

　　　Patti L. Dikes, under appointment by the Court of Appeal, for Appellant.

　　　Office of the County Counsel, Mary C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

　　　———————————

# INTRODUCTION

In 2015, Y.Q. (mother) and Justin W. (father) voluntarily petitioned the probate court to appoint Maria and Kevin S. as the legal guardians of mother and father's daughter, Kayla W. Kayla later became a dependent of the court following an incident of domestic violence between Maria and Kevin. Shortly before the disposition hearing in Kayla's dependency case, mother obtained an order from the probate court terminating the guardianship, a copy of which she provided to the juvenile court at the disposition hearing. The juvenile court told mother that the termination order was not valid because only the juvenile court had jurisdiction to modify or terminate the guardianship while Kayla's dependency case was pending. The court then told mother that she did not have standing to appear in Kayla's dependency case and denied mother's request for appointed counsel. The court told mother to confer with Kayla's legal guardians about arranging visitation with the child and to consult a lawyer to determine how to regain custody of the child. The court then excused mother from the remainder of the disposition hearing, at which the court ordered Kayla placed in Maria's custody.

On appeal, mother claims the court prejudicially erred by denying her request for appointed counsel at the disposition hearing and by finding she lacked standing to participate in Kayla's dependency proceedings.[1] We agree and reverse the court's dispositional order and remand for a new disposition hearing at which mother shall be allowed to participate with appointed counsel.

---

[1]     Father is not a party to this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The probate guardianship and the initiation of Kayla's dependency case

Kayla was born in November 2014. In August 2015, when Kayla was eight months old, her parents petitioned the probate court to appoint Maria, Kayla's maternal grandmother, and Kevin, Maria's husband, to be the child's legal guardians. In November 2015, the probate court granted the guardianship petition.

On March 6, 2016, Kevin physically assaulted Maria. After Kevin was arrested, Maria and Kayla moved into mother's home. The criminal court issued a two-year protective order precluding Kevin from having any contact with Maria and Kayla.

After learning of Kevin's arrest, the Department of Children and Family Services (Department) interviewed mother. She had continued to be involved in Kayla's life after Maria and Kevin were appointed as the child's legal guardians. Mother was not aware that Maria and Kevin had any history of domestic violence before she initiated the guardianship proceedings in probate court, and she claimed that if she did know of such conduct she would not have agreed to place Kayla in their custody.

In April 2016, the Department filed a dependency petition pursuant to Welfare and Institutions Code[2] section 300, subdivisions (a) and (b), alleging that Maria and Kevin had endangered Kayla by engaging in domestic violence (a-1 and b-1 allegations). The Department named mother as one of Kayla's

---

[2] All undesignated statutory references are to the Welfare and Institutions Code.

3

parents in the petition, but it did not allege she engaged in any wrongful conduct with respect to the child.

On April 18, 2016, the court conducted a detention hearing. Maria and Kevin appeared at the hearing and were appointed counsel; mother did not appear.[3] The court found the Department had alleged a prima facie case under section 300, subdivisions (a) and (b), and ordered Kayla detained from Kevin's custody and placed with Maria. The court granted Kevin three one-hour monitored visits with Kayla per week.

On May 18, 2016, the Department filed an ex parte request to remove Kayla from Maria's custody after learning that Kevin had been sleeping in the same home as Kayla, Maria, and mother. The court ordered Kayla detained from Maria's custody and placed in the Department's care.

After learning that Kevin had been staying with Maria, Kayla, and mother, the Department investigated the child's home. The home smelled of marijuana and there were animal feces and cockroaches on the floor. Kayla had been sleeping on dirty blankets in a crib in the living room, and she smelled of urine. The social worker found marijuana, a pipe, an ashtray, and a lighter in the bedroom where mother slept.

Kevin reported that Maria had recently moved out of the home because she was fearful of the people mother brought around. Maria reported that mother is often under the influence of drugs and alcohol, and that mother would sometimes have contact with her children[4] while she was under the influence.

---

[3] The record does not indicate whether mother received notice of that, or any other, hearing in Kayla's dependency proceedings.

[4] Mother has another child who is not a party to this case.

4

Maria told the Department that she would do whatever it takes to retain custody of Kayla.

On June 8, 2016, the Department filed a first-amended petition, adding allegations that Maria and Kevin failed to protect Kayla by continuing to have contact with each other in violation of Kevin's criminal protective order (b-2 allegation) and by maintaining an unsafe and unsanitary home environment for Kayla (b-3 allegation). On July 6, 2016, Maria and Kevin entered pleas of no contest to amended versions of the a-1, b-2, and b-3 allegations in the first-amended petition. The court continued the disposition hearing to August 2016.

On August 2, 2016, mother obtained from the probate court an order terminating Maria and Kevin's legal guardianship over Kayla. After receiving the order, mother met with a Department social worker. Mother stated that she wanted to regain custody of Kayla, and that to do so, she was willing to participate in reunification services and submit to drug testing.

On August 3, 2016, the Department interviewed Maria and assessed her new home for Kayla's placement. Maria reported that she had not had any recent contact with Kevin and that she still wanted to retain custody of Kayla. Maria also provided the Department with a certificate demonstrating she had recently completed a 16-week parenting program. Maria requested that her new address remain confidential because she had received threatening phone calls from mother and father.

## 2. The disposition hearing

On August 5, 2016, the date of the disposition hearing, mother appeared before the juvenile court and provided the judge with a copy of the August 2, 2016 probate order terminating Maria and Kevin's legal guardianship over Kayla. The court

informed mother that only the juvenile court had jurisdiction to terminate the guardianship while Kayla's dependency case was pending and that the August 2, 2016 order from the probate court was not valid. The court told mother that she did not have standing to appear as a party in Kayla's dependency case, and that if she wanted to terminate Maria and Kevin's legal guardianship, she would need to file the appropriate motion in the juvenile court.[5]

The following exchange between the court, mother, and the Department's counsel then took place:

"[Mother]: Is there any way I could get visits with my daughter?

[Court]: Pardon me?

[Mother]: Is there any way I could get visits with my daughter because I haven't seen my daughter, and I really want to see her.

[Court]: Talk to the legal guardian when she comes in.

---

[5]     We note that the court's advice to mother that she file a motion to terminate Kayla's guardianship in the juvenile court appears to be incorrect. Section 728 governs the termination of a probate guardianship while a dependency case involving the child subject to the guardianship is pending in juvenile court. That statute provides only that the "appropriate county department" such as the district attorney or county counsel, or the child's guardian or the child's attorney, may make a motion to terminate a probate guardianship in juvenile court. (§ 728, subd. (a).) The statute does not contain any provision permitting the child's parent to make such a motion.

6

[Counsel]: The Department will assess visits for [mother], and based on the court's tentative ruling, the Department will coordinate with the caretaker.

[Court]: Okay.

[Mother]: Is there any way I can get an attorney?

[Court]: Pardon me?

[Mother]: Is there any way I can get an attorney?

[Counsel]: She's asking for appointment of counsel.

[Court]: I can't appoint counsel for you because you're not a party. You don't have standing unfortunately. If you—I just can't. I'm limited to what I can do.

[Mother]: Like what am I supposed to do to get my custody back?

[Court]: I can't give you legal advice. What I suggest you do is talk to a lawyer.

[Mother]: I only gave her temporary custody, your honor. If I known [*sic*] my daughter was going to get detained from me, I never would have gave [*sic*] her custody of my daughter.

7

> [Court]: So I've given you everything I can give you, [mother]. You are excused."

After mother left the courtroom, the court conducted the disposition hearing. The Department recommended that Kayla remain removed from Maria and Kevin's custody and placed in suitable out-of-home care until her legal guardians could make adequate progress to return her to their custody. The court rejected the Department's recommendation, concluding that there was no "clear and convincing evidence that return of [Kayla] to the maternal grandmother, the legal guardian, would create a substantial risk of detriment to the child." The court then declared Kayla a dependent of the court, removed her from Kevin's custody, and released her to Maria's custody.[6] The court ordered the Department to provide Maria and Kevin family maintenance services.

On August 5, 2016, mother filed a timely notice of appeal.

---

[6] On March 30, 2017, the Department filed a request for judicial notice of the juvenile court's minute order dated February 3, 2017. We grant the Department's request and take judicial notice of the court's February 3, 2017 minute order. (See Evid. Code, § 452, subd. (d).)

The February 3, 2017 minute order authorizes Kevin to move back into Maria's home.

DISCUSSION

**1. The court erred by finding mother lacked standing to participate in Kayla's dependency proceedings and by denying her request for appointed counsel at the disposition hearing.**

Mother contends the juvenile court prejudicially erred when it found she lacked standing to participate in Kayla's dependency proceedings, including to have appointed counsel represent her at the disposition hearing, based on the fact that she had not successfully terminated Kayla's probate guardianship. Mother's claim raises an issue involving the court's application of statutes and court rules to undisputed facts, which is an issue of law that we review de novo. (See *In re R.D.* (2008) 163 Cal.App.4th 679, 684.) As we explain below, regardless of the validity of the probate order terminating Kayla's predependency guardianship, mother's agreement to place Kayla in that guardianship did not affect her rights to participate in the child's subsequent dependency proceedings and to have appointed counsel represent her at the disposition hearing.

Rule 5.530, subdivision (b), of the California Rules of Court identifies who is entitled to be present at a child's juvenile court hearings. Under subsection (b)(2) of that rule, the child's parents and legal guardians, among others, are entitled to attend "[a]ll juvenile court proceedings" concerning the child. (Cal. Rules of Court, rule 5.530, subds. (a)&(b)(1); see also §§ 290.2, 291, 349.) In addition, indigent parents and guardians have statutory rights to appointed counsel at any hearing where out-of-home placement of the child is at issue. (§ 317, subd. (b); *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1659.) A parent is not entitled to

9

be present or to have counsel appointed, however, if his or her parental rights have already been terminated. (See §§ 291, 302.)

Under the Probate Code, a child's parent may petition the probate court to appoint a guardian to assume care and custody of the child. (Prob. Code, §§ 1500 & 1510.) When a probate guardianship is established, the guardian assumes the care, custody, and control of the child, and the parent's authority over the child "ceases." (Fam. Code, § 7505, subd. (a); *Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1124.) In other words, a parent's rights are suspended when the guardianship is established. (*Ibid*.) The parent's rights are not, however, terminated at that point. Termination does not occur until either the probate court– if no dependency case involving the child is pending–issues an order freeing the child from the custody and control of his or her parents (see Prob. Code, § 1516.5), or until the juvenile court terminates the parent's rights in a dependency proceeding (see § 366.26).

A parent whose child is in a probate guardianship and whose parental rights have not been terminated qualifies as a noncustodial parent in a dependency proceeding. (See *In re Catherine H.* (2002) 102 Cal.App.4th 1284, 1289 (*Catherine H.*).) Like a custodial parent, a noncustodial parent is entitled to the same rights in a dependency proceeding that we outlined above. (See *id.* at p. 1291.)

As of the disposition hearing in this case, mother was Kayla's noncustodial parent because Kayla was in a probate guardianship and mother's parental rights had never been terminated by the probate or juvenile court. As a noncustodial parent, mother had standing to participate in Kayla's dependency case and was entitled to be present at Kayla's disposition

10

hearing. (Cal. Rules of Court, rule 5.530, subd. (b)(2); see also § 291 [the juvenile court must provide the child's parent notice of his or her right to attend the disposition hearing].) Mother was also entitled to appointed counsel at that hearing, assuming she was not able to afford private counsel, because the Department sought to have Kayla placed in out-of-home care. (See § 317, subd. (b).) The court therefore erred when it denied mother's request for counsel and denied her the opportunity to participate in the disposition hearing.

## 2. Mother was prejudiced by the court's actions.

Although it takes no position as to whether the court's actions were erroneous, the Department urges us not to reverse the dispositional order, arguing that mother suffered no prejudice by being denied appointed counsel and the opportunity to participate in the disposition hearing. Specifically, the Department argues mother suffered no prejudice because she was not entitled to an award of custody or visitation at the disposition hearing once the court ordered Kayla to be placed in Maria's custody. We disagree that mother was not prejudiced by the court's actions.

At the disposition hearing, a juvenile court has the authority to issue a variety of orders affecting the rights of the dependent child, the child's parents, and the child's guardians. For example, the court may, as the court in this case did, order the child to remain placed with his or her current caretaker. (§ 362, subd. (c).) In the alternative, the court may remove the child from the caretaker's custody after making the necessary findings. (§ 361, subd. (c).) If the court does remove the child, it must place the child with a noncustodial parent who requests custody, if any parent exists, unless the court finds such

11

placement would be detrimental to the child's safety or well-being. (§ 361.2, subd. (a).) Under section 362, the court may also make "any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." (§ 362.) That provision grants the court broad discretion to determine what best serves and protects the child's interest and to fashion any appropriate dispositional order that furthers that interest, including an order awarding visitation to a noncustodial parent with whom the court does not place the child, such as mother in this case. (See *In re Korbin Z.* (2016) 3 Cal.App.5th 511, 518.)

In fashioning a dispositional order, the juvenile court must "hear evidence on the question of the proper disposition to be made of the child." (§ 358, subd. (a).) "Before determining the appropriate disposition, the court shall receive in evidence the social study of the child made by the social worker, any study or evaluation made by a child advocate appointed by the court, **and other relevant and material evidence as may be offered**." (§ 358, subd. (b)(1), emphasis added.) The parties who are entitled to appear at the disposition hearing, including the child's noncustodial parent, therefore have the right to offer evidence addressing an appropriate dispositional order. (See *Catherine H.*, *supra*, 102 Cal.App.4th at p. 1291.)

At the disposition hearing in this case, mother could have argued, and presented evidence to support her argument, that the court should remove Kayla from her guardians' custody and place the child in mother's custody. (See § 361.2, subd. (a).) In the alternative, or if the court decided to return Kayla to Maria's custody, mother could have requested the court to award her visitation with the child under section 362. By finding mother lacked standing to participate in Kayla's dependency case,

12

however, the court effectively denied her the opportunity to make any formal request for custody or, at a minimum, visitation with her child, and to present supporting arguments and evidence with the assistance of counsel.  As a result, we are unable to evaluate the likelihood that mother would have been successful in seeking custody of, or at least visitation with, Kayla. Accordingly, we must reverse the court's dispositional order and remand for a new disposition hearing at which mother shall be permitted to make requests for custody and visitation with the assistance of appointed counsel.[7]

---

[7]     Because we conclude the court prejudicially erred by denying mother her statutory rights to be present and to appointed counsel, we do not address mother's related constitutional claims.

13

## DISPOSITION

The August 5, 2016 disposition order is reversed. The case is remanded to the juvenile court with directions to appoint counsel for mother, if she is indigent, and to conduct a new disposition hearing.

LAVIN, J.

WE CONCUR:

EDMON, P. J.

JOHNSON (MICHAEL), J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14

Court of Appeal, Second Appellate District, Division Three - No. B277567

**S244014**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

In re KAYLA W., a Person Coming Under the Juvenile Court Law.
_____

LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent,

v.

Y.Q., Appellant.

_____

      As recommended by the Court of Appeal pursuant to California Rules of Court, rule 8.1120, subds. (b)(1) and (c), the Reporter of Decisions is directed to publish the opinion in the above-titled matter in the Official Reports.

_____
*Chief Justice*